[No. D002206. Fourth Dist., Div. One. Mar. 10, 1987.]

THE PEOPLE, Plaintiff and Respondent, v.
STEVEN GARY HOWARD, Defendant and Appellant.

[No. D003300. Fourth Dist., Div. One. Mar. 10, 1987.]

In re STEVEN GARY HOWARD on Habeas Corpus.

**[Opinion certified for partial publication.[1]]**

---

[1]Pursuant to California Rules of Court, rules 976.1 and 976(b), this opinion is certified for publication with the exception of sections I through III.

**COUNSEL**

Gary Nelson, under appointment by the Court of Appeal, for Defendant and Appellant and Petitioner.

John K. Van de Kamp, Attorney General, John W. Carney, Michael D. Wellington and Frederick R. Millar, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**WIENER, Acting P. J.**—Steven Howard was convicted by a jury of false imprisonment by violence, menace, fraud or deceit (Pen. Code, §§ 236, 237[2]), forcible oral copulation (§ 288a, subd. (c)), forcible sodomy (§ 286, subd. (c)), spousal rape (§ 262, subd. (a)) and assault with a deadly weapon (§ 245, subd. (a)(1)), all committed against his estranged wife, Verdise.[3] He

[2] All statutory references are to the Penal Code unless otherwise specified.
[3] Because we are dealing with a husband and wife as defendant and prosecutrix, we will refer to each by their first name.

was sentenced to a total term of 12 years in prison. He appeals from the judgment and also petitions for writ of habeas corpus, which has been consolidated for disposition with this appeal.

Steven contends that there were repeated instances of prosecutorial misconduct, erroneous jury instructions and a failure to give him a *Miranda* warning before an interrogation. His petition for writ of habeas corpus alleges ineffective assistance of counsel. We have concluded that Steven's claims on appeal fail to establish the existence of any prejudicial error at trial and accordingly affirm the judgment. As to his writ petition, although it appears to state a prima facie case of ineffective assistance by virtue of trial counsel's failure to move to suppress certain evidence, we are required by the governing standard of *Strickland* v. *Washington* (1984) 466 U.S. 668 [80 L.Ed.2d 674, 104 S.Ct. 2052] to ascertain the likelihood that any error committed by trial counsel actually contributed to the verdict. Applying that standard, we conclude there is no reasonable probability that the jury would have reached a different verdict had the challenged evidence been suppressed. Accordingly, we also deny Steven's habeas corpus petition.

FACTUAL BACKGROUND

Steven and Verdise Howard were married on August 31, 1980. They physically separated and began living in separate residences in March of 1983.

On July 15, 1983, Verdise contacted Steven to arrange to pick up a child support check from him. She arrived at Steven's residence at approximately 9 o'clock that evening. After writing the check and handing it to her, Steven demanded that she disrobe. When Verdise refused, Steven produced a knife and again ordered her to take off her clothes. Verdise disrobed and pulled on Steven's penis. He reacted by slashing the knife at her, causing several superficial cuts on her hands.

Steven ordered Verdise onto the bed and placed her in handcuffs which were attached to the bedframe. He then forced her to engage in a variety of sex acts. At her earliest opportunity Verdise fled the apartment clad only in a bath towel and reported the offenses to the police.

At about the same time, Steven called the 911 emergency operator, explaining that he had just "assaulted" his wife. He said, "I'm not proud of what I did" and asked the operator to "tell them I'm sorry and that I'll make everything all right." He then indicated he was attempting to commit suicide by slashing his wrists.

Following the call, officers were dispatched to Steven's residence. After receiving no response to their knock, they entered the apartment through

the unlocked door and found Steven in the kitchen holding a box cutter. He threatened to kill himself if they came any closer. One of the officers was able to subdue Steven using mace and he was then taken to the hospital. A search of the apartment yielded, among other things, a knife, a pair of handcuffs and some bloodstained bedding.

At the hospital, Steven waived his *Miranda* rights and agreed to talk with Officer Bigbie. When asked what happened that night, Steven replied that he "was tired of being fucked with." Asked to elaborate on the events leading up to the incident, he related the following: "I said, 'Hey baby, how about a little for old times sake?' She said, 'Fuck you in the ass.' . . . [After that] I don't remember, I just freaked out."

Steven testified at trial that he had engaged in consensual sex with Verdise that night, but that they had begun to argue about a child custody matter afterwards. Verdise attacked Steven with a knife and it was while he was attempting to disarm her that she had been cut.

### DISCUSSION

### I–III*

. . . . . . . . . . . . . . . . . . . .

### IV

### WRIT PETITION

In his petition for writ of habeas corpus, Steven alleges ineffective assistance of counsel based on his trial attorney's failure to move to suppress the incriminating evidence obtained by the police as a result of a warrantless search of his residence following his being maced by one of the officers. Not only was the evidence itself incriminating but the locations where it was found allowed the prosecutor to argue to the jury that Steven intentionally concealed the evidence and thereby demonstrated consciousness of his guilt.

The record provides no satisfactory explanation for counsel's failure to move to suppress the evidence. Normally under such circumstances we would issue the writ to enable the superior court to conduct an evidentiary hearing at which defense counsel would be afforded the opportunity to explain his conduct. (See *People* v. *Pope* (1979) 23 Cal.3d 412, 426 [152 Cal.Rptr. 732, 590 P.2d 859, 2 A.L.R.4th 1].) Citing *Strickland* v.

---

*See footnote 1, *ante,* page 41.

*Washington, supra,* 466 U.S. 668 and *People* v. *Ledesma* (1987) 43 Cal.3d 171 [233 Cal.Rptr. 404, 729 P.2d 839], however, the People urge that such an evidentiary hearing is unnecessary because there is no "reasonable probability that, but for counsel's [alleged] unprofessional errors, the result of the proceeding would have been different." (*Strickland, supra,* 466 U.S. at p. 694 [80 L.Ed.2d at p. 698]; *Ledesma, supra,* 43 Cal.3d at pp. 217-218.) In support of this argument, the People point to a variety of other evidence in the case —in particular Steven's statements to Officer Bigbie and the 911 operator— which they suggest makes it unlikely the jury would have reached a different conclusion even had the seized evidence been excluded.

This is the second opinion we have filed in this case. In the original decision, we accepted the People's contention that the effect of counsel's omission must be inquired into but concluded that the "reasonable probability" standard was an inappropriate test to use in making such an evaluation. We reasoned as follows: "It is well established that a criminal conviction cannot be affirmed unless any federal constitutional errors in the procedures leading to the conviction are determined to be harmless beyond a reasonable doubt. (*Chapman* v. *California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705].) Thus, an error in admitting evidence seized in violation of the Fourth Amendment must be judged by the *Chapman* standard. (*People* v. *Ratliff* (1986) 41 Cal.3d 675, 688 [224 Cal.Rptr. 705, 715 P.2d 665]; *People* v. *Minjares* (1979) 24 Cal.3d 410, 424 [153 Cal.Rptr. 224, 591 P.2d 514].) Here, acceptance of the People's argument would result in the following anomalous situation: if defense counsel failed to move to suppress illegally seized evidence, a reversal would *only* be warranted if it was reasonably probable a different result would have been reached had the evidence been excluded; however, if defense counsel made the motion but the court erroneously denied it, the conviction would be reversed *unless* the reviewing court was convinced beyond a reasonable doubt that the illegally seized evidence did not contribute to the verdict. In the two situations, the evidence before the jury is exactly the same. We believe logic requires that the standard of review be the same as well."

Our original opinion was filed on June 19, 1986. Seven days later, on June 26, the United States Supreme Court issued its decision in *Kimmelman* v. *Morrison* (1986) 477 U.S. 365 [91 L.Ed.2d 305, 106 S.Ct. 2574], which directly affects the issue of the appropriate standard of prejudice. By the time the Attorney General became aware of the substance of *Kimmelman,* our jurisdiction to grant a rehearing had already expired. (See Cal. Rules of Court, rules 24(a) and 27(a).) Quite appropriately, he then petitioned the California Supreme Court for review, suggesting that the case be retransferred to this court for reconsideration in light of *Kimmelman.* The Supreme Court's order to that effect was filed on October 2, 1986.

*Kimmelman* involved facts remarkably similar to this case. In a prosecution for rape, the state introduced physical evidence consisting of a bedsheet seized from the defendant's apartment without a warrant several hours after the rape. Semen stains and hairs found on the sheet were consistent with the defendant having committed the rape. Because of his failure to pursue any pretrial discovery, defense counsel was unaware of the existence of the sheet and therefore failed to file a suppression motion within the time limits prescribed by the New Jersey court rules.

Following the affirmance of his conviction by the New Jersey state courts, defendant sought federal habeas corpus relief on the grounds of ineffective assistance of counsel. The precise issue before the U.S. Supreme Court was whether the rule of *Stone* v. *Powell* (1976) 428 U.S. 465 [49 L.Ed.2d 1067, 96 S.Ct. 3037]—precluding federal habeas corpus review of Fourth Amendment claims—applied equally to Sixth Amendment claims of ineffective assistance where counsel's alleged error was the failure to timely file a motion to suppress evidence seized in violation of the Fourth Amendment. The court held that it did not, focussing on what it perceived to be significant differences between Fourth and Sixth Amendment claims. (477 U.S. at p. __ [91 L.Ed.2d at pp. 318-324, 106 S.Ct. at pp. 2582-2587].) In doing so, the court specifically observed that the *Strickland* "reasonable probability" test for prejudice was the appropriate standard by which to evaluate counsel's failure to bring a suppression motion. (*Id.* at p. __ [91 L.Ed.2d at p. 319, 106 S.Ct. at p. 2583].) If that weren't enough, a footnote in Justice Brennan's opinion touched on the precise issue which concerned us in our earlier decision. Responding to the suggestion that defense attorneys might "consciously default or poorly litigate their clients' Fourth Amendment claims in state court in the hope of gaining more favorable review of these claims in Sixth Amendment federal habeas proceedings," the court stated: "[W]hen an attorney chooses to default a Fourth Amendment claim, he also loses the opportunity to obtain direct review under the harmless-error standard of *Chapman* v. *California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), which requires the State to prove that the defendant was not prejudiced by the error. By defaulting, counsel shifts the burden to the defendant to prove that there exists a reasonable probability that, absent his attorney's incompetence, he would not have been convicted. . . ." (477 U.S. at p. __, fn. 7 [91 L.Ed.2d at p. 324, 106 S.Ct. at p. 2587].)

*Kimmelman* thus makes abundantly clear the Supreme Court intends that a counsel's failure to bring an appropriate suppression motion should only result in a new trial if the *Strickland* "reasonable probability" standard is satisfied. We might have preferred that in reaching this conclusion, the Court discuss the factors which make it willing to tolerate a greater likelihood of error in the outcome where the mistake is defense counsel's rather than that

of the trial judge. Nonetheless, with or without explanation, we are not free to substitute our view for that of the United States Supreme Court in matters concerning the proper interpretation of the Sixth Amendment.

Steven argues that we are authorized to prescribe a more stringent standard of review under California law. It is true the defendant's right to effective assistance of counsel in California is premised on *both* the Sixth Amendment and article I, section 15 of the California Constitution. (See *People* v. *Pope, supra,* 23 Cal.3d at p. 422.) Steven's suggestion that we mandate a *Chapman* "reasonable doubt" test for prejudice, however, ignores the California Supreme Court's recent decision in *People* v. *Ledesma, supra,* 43 Cal.3d 171, which accepted and applied *Strickland's* "reasonable probability" test. (*Id.* at pp. 217-218.) Significantly, one of the alleged deficiencies of defense counsel in *Ledesma* was his failure to bring a suppression motion directed at the contents of a telephone call intercepted by police after a warrantless entry of the defendant's residence. (*Id.* at pp. 208-209; see also *id.* at p. 235 (conc. opn. of Mosk, J.).) Moreover, even in the absence of *Ledesma,* violations of state constitutional rights are normally subject to review under the standard of *People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243], i.e., whether it is "reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (See *People* v. *Rodriguez* (1986) 42 Cal.3d 1005, 1012 [232 Cal.Rptr. 132, 728 P.2d 202].) This is particularly true where the federal standard for review of similar error is something less than the *Chapman* standard. (Compare *Rodriguez, supra,* 42 Cal.3d at p. 1012, recognizing a limited exception to the *Watson* standard of review where "numerous federal constitutional rights may be affected" by violation of a state constitutional right.)

We thus view ourselves as bound by the *Strickland* standard of review as mandated in *Kimmelman* and *Ledesma. Strickland* requires that we ascertain whether there is a "reasonable probability" that Steven would have been convicted had the challenged evidence been excluded.[4] Under this standard,

---

[4]The People urge that *Strickland's* reasonable probability standard is the equivalent of the *Watson* test which has traditionally been applied to most ineffective assistance claims. (See *People* v. *Fosselman* (1983) 33 Cal.3d 572, 584 [189 Cal.Rptr. 855, 659 P.2d 1144].) While the language of the two tests is certainly similar (*Strickland*: "reasonable probability" vs. *Watson*: "reasonably probable"), *Strickland* specifically holds that the test is not to be interpreted as requiring a showing that a different result was "more likely than not." (466 U.S. at pp. 693-694 [80 L.Ed.2d at p. 697].) The *Watson* standard, on the other hand, has at least been applied in a manner closely approximating the "more likely than not" test. (See, e.g., *Capelouto* v. *Kaiser Foundation Hospitals* (1972) 7 Cal.3d 889, 897 [103 Cal.Rptr. 856, 500 P.2d 880]; *People* v. *Parks* (1971) 4 Cal.3d 955, 961 [95 Cal.Rptr. 193, 485 P.2d 257]; *People* v. *Hill* (1967) 67 Cal.2d 105, 119 [60 Cal.Rptr. 234, 429 P.2d 586]; *People* v. *Williams* (1986) 180 Cal.App.3d 57, 63 [225 Cal.Rptr. 498]; *People* v. *Prantil* (1985) 169 Cal.App.3d 592, 610 [215 Cal.Rptr. 372]; *People* v. *Barrow* (1976) 60 Cal.App.3d 984, 995 [131 Cal.Rptr. 913]; but see *People* v. *Ross* (1967) 67 Cal.2d 64, 84 [60 Cal.Rptr. 254, 429 P.2d 606] (dis. opn. of Traynor, C. J.) .)

We need not decide here whether *Watson* in fact prescribes a less stringent standard. In the event it does, we are bound by the supremacy clause to apply *Strickland's* more rigorous test.

"[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome . . . [because] [v]irtually every act or omission of counsel would meet that test [citation] and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." (466 U.S. at p. 693 [80 L.Ed.2d at p. 697].) On the other hand, the *Strickland* court specifically rejected as too stringent an "outcome-determinative" test which would have required the defendant to show "that counsel's deficient conduct more likely than not altered the outcome in the case." (*Ibid.*)

Thus, the reasonable probability test represents a sort of middle ground among the available tests for prejudice. In trying to pinpoint its exact location, we are instructed by *Strickland* that "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." (*Id.* at p. 694 [80 L.Ed.2d at p. 698].) "[T]he ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged. In every case the court should be concerned with whether, despite the strong presumption of reliability, the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results."[5] (*Id.* at p. 696 [80 L.Ed.2d at p. 699].)

Unfortunately, these grandiloquent formulations give little substance to what is essentially a statistical concept, focussing on the likelihood that a given error affected the outcome of a trial. In statistical terms, we believe *Strickland* requires a significant but something-less-than-50 percent likelihood of a more favorable verdict. Viewing the factual record in the present case, we think Steven has failed to meet his burden under *Strickland* because the probability of a different result is not significant. Although possible—and thus not harmless beyond a reasonable doubt under the *Chapman* standard —we think it unlikely that the jury would find Steven's statements to Officer Bigbie and the 911 operator consistent with his consent defense. In particular, Steven's response to Bigbie's question regarding how the incident began makes it quite clear Verdise had not consented. Consistent with *Strickland* then, even if Steven could establish at an evidentiary hearing that his counsel's failure to bring a suppression motion was unjustified, a new trial

---

[5]At oral argument, the Attorney General urged that we read *Strickland* in light of Justice Powell's concurring opinion in *Kimmelman* which suggests that "the admission of illegally seized but reliable evidence can [never] constitute 'prejudice' under *Strickland*" (477 U.S. at p. __ [91 L.Ed.2d at p. 330, 106 S.Ct. at p. 2592]) because the use of such evidence does not ". . . call into question the basic justice of the defendant's conviction . . ." (*id.* at p. __ [91 L.Ed.2d at p. 332, 106 S.Ct. at p. 2594]). We specifically decline to do so. We believe a majority was reached in *Kimmelman* only after Justice Powell's thesis was considered and rejected. Accordingly, we do not think it legally correct to interpret *Strickland* through Justice Powell's concurring opinion in *Kimmelman*.

would not be required because there is no "reasonable probability" of a different result on retrial.

## DISPOSITION

Judgment affirmed. Petition for writ of habeas corpus denied.

Work, J., and Jones (N. A.), J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.