[No. D013188. Fourth Dist. Div. One. Mar. 13 1992.]

THE PEOPLE, Plaintiff and Respondent, v.
DAVID BRUCE LLOYD, Defendant and Appellant.

[No. D014795. Fourth Dist., Div. One. Mar. 13, 1992.]

In re DAVID BRUCE LLOYD on Habeas Corpus.

COUNSEL

Stephen R. Brodsky, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Harley D. Mayfield, Assistant Attorney General, Raquel M. Gonzalez and Leslie Fleming, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

WIENER, Acting P. J.—An amended information charged defendant David Bruce Lloyd with second degree burglary (Pen. Code, § 459),[1] automobile theft (Veh. Code, § 10851), and receiving stolen property (§ 496, subd. (1)).

---

[1] All statutory references are to the Penal Code unless otherwise specified.

The jury found Lloyd guilty of the burglary and stolen property charges, but found him not guilty of auto theft. The court subsequently found true two alleged prison priors within the meaning of section 667.5, subdivision (b). The court sentenced Lloyd to prison for five years.

Lloyd appeals and petitions for writ of habeas corpus.[2] For the reasons set forth below, we affirm the judgment and deny the habeas corpus petition.

## FACTUAL BACKGROUND

On March 29, 1990, at approximately 4 a.m., San Diego Police Officer Daniel Massie and his partner responded to a silent burglar alarm at the Treasure Trove, an antiques store on University Avenue. Massie saw a black Toyota pickup parked at the rear of the building. Massie also saw Lloyd standing on the sidewalk at the corner of the building about 10 yards from the truck. Lloyd looked at the officer, turned around, and began walking away. When the officer asked him to stop, Lloyd complied. Lloyd identified himself with a false name. Lloyd said he worked the graveyard shift as a welder and was coming from work. He said he worked on University Avenue, but did not know the address.

During the conversation, the officers heard noises coming from inside the store. Officer Scott Morrison, another police officer who had arrived at the scene, placed Lloyd in the back of a patrol vehicle, and locked the doors. With the assistance of a police dog, the officers apprehended a suspect, later identified as Donald Prevatt, inside the store.

While still at the scene, the officers discovered the pickup truck had been reported stolen about a week earlier. They found several types of shoeprints near the truck. San Diego Police Officer William Farmer testified, based on his training and experience as a field evidence technician, it was his opinion one of the types of shoeprints belonged to Lloyd. Farmer based his opinion on his on-site matching the shoeprint with shoes Lloyd was wearing at the time of the burglary.

After Lloyd had been taken out of the police car, officers searched the backseat. They found a foreign car key beneath the backseat where Lloyd had been sitting.[3] After arresting Lloyd, the officers obtained a waiver of his *Miranda* rights. During questioning, Lloyd denied knowing Prevatt or anything about the burglary.

---

[2] In his writ petition, Lloyd asserts the same contentions as those advanced in his appeal. We therefore consolidated the petition with the appeal.

[3] At trial, the prosecution referred to this incident as evidence of Lloyd's knowledge of his guilt. Since the ignition had been tampered with and the owner's key had not been stolen, the

Christine Prevatt, Donald Prevatt's grandmother, testified he lived with her at the time of the burglary. Lloyd visited with Donald "a couple of times" before the break-in at the Treasure Trove. She further testified that several hours before the burglary, Lloyd came to her house around 9 p.m. and spoke to her grandson for a few minutes. Shortly thereafter, they left together.

DISCUSSION

I.

MARSDEN/FARETTA MOTION

Lloyd contends the court's failure to conduct *Marsden*[4] and *Faretta*[5] hearings in response to a pretrial letter written to the superior court constitutes reversible error.

The court appointed assistant public defender Albert Bradley to represent Lloyd. About one month before the scheduled date for his trial, Lloyd wrote a letter to the superior court addressed to "Your Honor," stating in part:

"I, David B. Lloyd. BK #90-126610, do wish to have my 'Lawyer,' one, Mr. A. Bradley (Public Defenders) relieved from my case. [¶] It is not merely just a few points of 'difference' . . . I strongly feel Mr. Bradley has not the time nor the interest. [¶] At 'discovery', . . . Mr. Bradley could not even find time to attend in his clients behalf, his client being myself. He has yet to make known that my so called 'co-defendant', Mr. Donald Prevatt has filed a document . . . stating . . . that I, David Lloyd, had no prior knowledge nor involvement in this crime . . . . [¶] [Bradley] . . . has not filed for a 'fast and speedy trial', as requested, He did not file a motion . . . for dismissal of charges do [*sic*] to the 'anemic' condition of the prosecutors circumstantial case against me . . . *I am asking for the courts to either entertain the thought of granting me the right to defend myself—pro per—or, as I've asked, dismiss Mr. Bradley from this case so I may acquire a Lawyer who can and may provide an adequate defense. . . .*"[6] (Italics added.) The letter bears a superior court file stamp date of May 23, 1990. The Attorney

---

prosecutor did not argue this particular key was the one used to drive the stolen pickup, since any key could have been used for this purpose.

[4]*People* v. *Marsden* (1970) 2 Cal.3d 118 [84 Cal.Rptr. 156, 465 P.2d 44].

[5]*Faretta* v. *California* (1975) 422 U.S. 806 [45 L.Ed.2d 562, 95 S.Ct. 2525].

[6]The letter concludes:

"Your honor, [¶] for a lawyer to do less than his or her u[t]most is, truly, a betrayal to his or her profession as well as to his or her client. Justice is not an easy point to reach nor render when your client looks, believes and lives as I do. Yet, to give less of your talent,

General acknowledges the court did not conduct a hearing in response to this letter.

About a month later, on the second day of trial and outside the presence of the jury, defense counsel informed the court he had received a letter from Lloyd asking, among other things, that counsel subpoena certain witnesses. Counsel then stated to the court: "I take it from these papers that Mr. Lloyd has some problems with my representation of him, and would like the court to hear him out on that." The following colloquy then took place between the court and Lloyd:

"THE COURT: All right. Mr. Lloyd?

"THE DEFENDANT: I have some questions and they have to be answered. The articles in the back of the truck are in the picture. Those articles aren't listed any evidence here. There is no report on them articles, and I think it might be pertinent to this case because none of them belong to me. The truck didn't belong to me and, I think, the officers by returning the truck to the owner with the articles in the back, he stated clearly yesterday that nothing in the back of the truck was his. Whose are they? I think that it's important. I think it should be found out. [¶] All evidence at the crime scene should have been gone over and logged or tagged, not just what might have been apparent or what they assumed was apparent.

"THE COURT: It sounds like your concerns at this point don't really pertain to counsel as much as to the way the evidence is being presented, and one of the factors that you have to recognize is that evidence only comes in one witness at a time. I presume there may be some police officers that will be called in this case. But those police officers will probably address seeing the truck and describing its condition.

"Your attorney will have an opportunity, if he feels that it's a matter that is of concern to the defense and will assist them in the defense, to ask the officer what became of the items, if that is a matter that is of concern to you and of counsel. You can't expect the first two witnesses to cover virtually everything that is here. There are many items of evidence yet to be introduced, and I assume that we can communicate your concerns to counsel and then counsel can decide what is in the best interests of you in terms of how to best present your case and how to challenge any evidence that is being offered by the prosecution.

---

your knowledge and effort to seek and reach the point of just decision because of the aforementioned is a crime unto itself."

We think this powerfully states the meaning underlying a lawyer's responsibilities to his or her client. In spite of Lloyd's eloquence, there is no basis on this record to conclude Lloyd's appointed counsel fell below this standard of conduct.

"Is there anything further?

"The Defendant: Nothing further."

■ "When a defendant seeks to discharge his appointed counsel and substitute another attorney, and asserts inadequate representation, the trial court must permit the defendant to explain the basis of his contention and to relate specific instances of the attorney's inadequate performance." (*People v. Crandell* (1988) 46 Cal.3d 833, 854 [251 Cal.Rptr. 227, 760 P.2d 423]; see *Marsden, supra,* 2 Cal.3d at p. 123.) Likewise, once a defendant timely asserts his constitutional right to represent himself, a court must allow the defendant to proceed with his own defense, provided the court is satisfied the defendant made a knowing and intelligent election. (*People v. Burton* (1989) 48 Cal.3d 843, 852 [258 Cal.Rptr. 184, 771 P.2d 1270]; *People v. Windham* (1977) 19 Cal.3d 121, 127-128 [137 Cal.Rptr. 8, 560 P.2d 1187]; see *Faretta, supra,* 422 U.S. 806.)

■ Lloyd's May 23d letter unequivocally stated Lloyd's dissatisfaction with his counsel and his desire to represent himself if the court would not appoint a new counsel. Thus, the court should have conducted a hearing to determine whether Lloyd was entitled to new counsel, and if not, whether his self-representation request was timely and made knowingly and intelligently.

The Attorney General maintains Lloyd was not entitled to a hearing because the trial judge may have been "personally" unaware of the letter.[7] Such circumstances, however, do not justify the court's failure to conduct the requisite hearing. The letter, bearing a superior court clerk's office file stamp, clearly identified Lloyd, his codefendant, and Lloyd's appointed counsel. In such context, the fact that a particular judge may not have been aware of the letter does not excuse the court from providing Lloyd with his constitutionally mandated hearings.

We conclude, however, the effect of the administrative error was resolved when Lloyd failed to renew his earlier motion at the hearing conducted on the second day of trial. At that time Lloyd essentially reasserted his *Marsden* motion, but the reasons for the motion were not that he wanted to substitute his counsel; rather, he stated only he had problems with the way counsel planned to present the evidence. At the hearing, the court provided Lloyd full

---

[7]The Attorney General suggests a "plausible explanation" is that "appellant's rather unorthodox moving papers did not immediately find their way to his superior court file." We are unwilling to rest our decision on this ground where the defendant's identity, his booking number and the name of his codefendant are contained in the letter. There was adequate information to enable the clerk's office to identify Lloyd's case so that the letter could have been brought to the trial judge's attention in a timely manner.

opportunity to voice any complaints he had about his attorney. There was nothing in Lloyd's response indicating he was dissatisfied with counsel's representation, other than the way the evidence was being presented. Lloyd appears to have been satisfied with the trial court's explanation of the evidentiary process and his right to express his concerns with his attorney at any time.

Thus, the court's error in failing to consider Lloyd's first *Marsden* motion became harmless when Lloyd failed to reassert the reasons underlying the motion at the later hearing. For the same reason, Lloyd waived his earlier request for self-representation, which had been asserted as an *alternative* to substitution of counsel.

## II.

### INEFFECTIVE ASSISTANCE OF COUNSEL

Lloyd contends he was denied the effective assistance of counsel both before and during his trial. To successfully make this argument Lloyd has the burden of showing "(1) counsel's representation was deficient, i.e., it fell below an objective standard of reasonableness under prevailing professional norms; and (2) counsel's deficient representation subjected the defense to prejudice, i.e., there is a reasonable probability that but for counsel's failings the result would have been more favorable. [Citations.]" (*People v. Babbitt* (1988) 45 Cal.3d 660, 707 [248 Cal.Rptr. 69, 755 P.2d 253].)

*Suppression Motion*

Initially Lloyd says his counsel was ineffective because he failed to bring a suppression motion. He explains the preliminary hearing testimony by police officers Massie and Morrison established the officers first considered him as a possible witness, not a suspect, and therefore his detention inside the police vehicle was illegal. He emphasizes Morrison's testimony, "I did not pat him down or anything when I arrived at the scene. [Lloyd] was being detained as a possible witness to the crime that occurred." Lloyd says such testimony should "have put any reasonable and prudent defense counsel on notice of a potential basis for moving to suppress substantially all evidence connecting appellant to the burglary . . . and the . . . stolen truck."

Lloyd asserts he would have prevailed on a suppression motion because under California law a detention is rendered unlawful if the officer, such as Officer Morrison here, did not subjectively entertain a suspicion that the detainee was involved in criminal activity.

Pre-Proposition 8 California decisions hold the lack of such *subjective* suspicion may render a detention unlawful, requiring the suppression of evidence flowing from the detention. (See *People* v. *Bower* (1979) 24 Cal.3d 638, 647 [156 Cal.Rptr. 856, 597 P.2d 115]; *In re Tony C.* (1978) 21 Cal.3d 888, 893 [148 Cal.Rptr. 366, 582 P.2d 957].) Now, however, the analysis of such evidentiary issues must be conducted under federal law. (*In re Lance W.* (1985) 37 Cal.3d 873, 896 [210 Cal.Rptr. 631, 694 P.2d 744]; *People* v. *Gonzales* (1989) 216 Cal.App.3d 1185, 1190 [265 Cal.Rptr. 507]; *People* v. *Le* (1985) 169 Cal.App.3d 186, 193-195 [215 Cal.Rptr. 106].) Under federal law, a subjective suspicion is not required. The reasonable suspicion necessary to justify a detention is measured *solely* by an objective standard. (See *Scott* v. *United States* (1978) 436 U.S. 128, 138 [56 L.Ed.2d 168, 178, 98 S.Ct. 1717]; *People* v. *Le, supra* 169 Cal.App.3d at p. 193; see also *Maryland* v. *Macon* (1985) 472 U.S. 463, 470-471 [86 L.Ed.2d 370, 378, 105 S.Ct. 2778]; 3 LeFave, Search and Seizure (2d ed. 1987) § 9.3(a) at p. 425 ["[the] test [for a temporary seizure] . . . is *purely* objective and thus there is no requirement that an actual suspicion by the officer be shown"].) "Whether a Fourth Amendment violation has occurred 'turns on an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time,' . . . and not on the officer's actual state of mind at the time the challenged action was taken." (*Maryland, supra,* 472 U.S. at pp. 470-471 [86 L.Ed.2d at p. 378], quoting *Scott* v. *United States, supra,* 436 U.S. 128, 136 [56 L.Ed.2d 168, 177].) Thus, following the enactment of Proposition 8 and pursuant to *Lance W.,* the prosecution no longer has the burden of showing a police officer *actually* suspected the individual detained was involved in criminal activity.[8] Rather, the focus is on whether the officer's conduct was objectively reasonable.

 Here, it was objectively reasonable for the officers to suspect Lloyd was involved in the burglary. The officers found Lloyd standing alone at 4

---

[8]In *In re James D.* (1987) 43 Cal.3d 903, 914 [239 Cal.Rptr. 663, 741 P.2d 161], a post-Proposition 8 case, the California Supreme Court noted the similarities between the federal and California tests with regard to whether a detention is justified, calling the California test "essentially the same standard" as the federal test. Despite this, the court set forth the controlling test in terms of both objective and subjective standards: " '[I]n order to justify an investigative stop or detention the circumstances known or apparent to the officer must include specific articulable facts causing him to suspect that (1) some activity relating to crime has taken place or is occurring or about to occur, and (2) the person he intends to stop or detain is involved in that activity. Not only must he subjectively entertain such a suspicion, but it must be objectively reasonable for him to do so . . . .' " (*Id.* at p. 914, citing *In re Tony C., supra,* 21 Cal.3d 888, 893.) Though *James* explicitly reaffirmed the subjective and objective standards, the decision is not controlling here since the precise issue presented here was not raised by the parties or considered by the court. (See *Isbell* v. *County of Sonoma* (1978) 21 Cal.3d 61, 73 [145 Cal.Rptr. 368, 577 P.2d 188] [" 'cases are not authority for propositions not considered therein.' "].)

a.m. next to a business in which a silent alarm had just been triggered. When he saw the officers, Lloyd began walking away. On these facts, the officers acted reasonably under the circumstances in stopping and detaining Lloyd as a possible burglary suspect. (See *People* v. *Dolliver* (1986) 181 Cal.App.3d 49, 56 [225 Cal.Rptr. 920].) Once it was discovered that someone was still inside the business, it was reasonable for the police to temporarily[9] detain Lloyd in the car until they could stabilize the situation to further question Lloyd about his possible involvement in the criminal activity.

We therefore conclude Lloyd was not prejudiced by his counsel's failure to bring a suppression motion and accordingly reject his claim of ineffective assistance of counsel. (See *People* v. *Howard* (1987) 190 Cal.App.3d 41, 48-49 [235 Cal.Rptr. 223].)

*Trial Counsel's Failure to Challenge a Juror*

■■■■ Lloyd argues his counsel was ineffective for failing to challenge Juror Delane Veaner for cause, under section 1089,[10] or to challenge her peremptorily.

■ Included in Lloyd's charged offenses was automobile theft. During voir dire, prospective Juror Veaner said her car had been stolen approximately two weeks earlier and it had not yet been recovered. Thereafter, the court questioned Veaner regarding whether she could be a fair and impartial juror despite her personal experience. Veaner indicated she could "try to be fair," but "I can't say that, you know, it's not totally out of my mind that my car is still missing. Auto theft, that is a fact." The court later asked "do you have some question because this incident of the car theft is so recent in your mind, some of that might possibly spill over to the defendant's disadvantage? Veaner responded: "You know, that's possible." After the court inquired whether counsel had any questions, the following occurred:

"[Defense Counsel]: I have had cars stolen and that doesn't disqualify me from being a lawyer for Mr. Lloyd. Just the fact that you have had a car stolen doesn't disqualify you from being a juror and being fair in this case.

"What the court is asking to you to do is simply be cognizant, be aware of the fact that you have a possible prejudice and be able to deal with that and still be fair.

---

[9]The record is unclear as to the precise amount of time the officers kept Lloyd inside the police vehicle. But it appears from the officer's testimony the time was relatively short, perhaps no longer than five or ten minutes.

[10]Section 1089 provides, "[i]f at any time, . . . a juror . . . is found to be unable to perform his duty, or if a juror requests a discharge and good cause appears therefor, the court may order him to be discharged and draw the name of an alternate . . ." A juror's inability to "perform" his or her duties "must appear in the record as a demonstrable reality." (*People* v. *Compton* (1971) 6 Cal.3d 55, 60 [98 Cal.Rptr. 217, 490 P.2d 537].)

"Do you think you could do that?

"MRS. VEANER: Yeah, I do.

" . . . . . . . . . . . . . . . . . . . . . .

"[PROSECUTOR]: Mrs. Veaner, there won't be any evidence, to my knowledge, about your car in this case. That is kind of bottom line here. Knowing that, do you feel you can sit as a fair and impartial juror of the facts in this case?

"[MRS. VEANER]: Right. I do."

Veaner's final responses to defense counsel and the prosecutor made clear she could be a fair and impartial juror and belie Lloyd's assertion she was unable to perform her duty within the meaning of section 1089. Significantly, *defense counsel* made the effort to rehabilitate Veaner and to make clear in Veaner's own mind that she could be a fair and impartial juror. Such conduct shows defense counsel had some reasonable justification for wanting to keep Veaner on the jury, despite the recent theft of her car. Absent any evidence to the contrary, Lloyd failed to establish his counsel's representation was deficient by failing to challenge Juror Veaner. Moreover, Lloyd did not assert any additional facts in his writ petition to rebut the inference in the record that defense counsel had reasonable justification for retaining Veaner on the jury panel. Lloyd has therefore failed to establish a prima facie case for writ relief.

*Counsel's Failure to Interview Christina Prevatt*

■ Lloyd contends his lawyer was also ineffective by failing to interview prosecution witness Christina Prevatt.[11] Prevatt testified that about seven hours before the burglary her grandson and Lloyd left her house together. Lloyd says he was prejudiced because "[p]retrial verification of Mrs. Prevatt's statement to police would have enabled [trial counsel] to effectively counsel me regarding the strength of the prosecution's case and the wisdom to proceed to trial or to settle the case by plea bargain."

Aside from this statement Lloyd makes no further showing he was prejudiced by his counsel's failure to interview Prevatt. Lloyd does not support his writ petition with any *facts* showing the prosecution ever offered a pretrial plea bargain. But even if we were to assume the prosecution made

---

[11]Lloyd asserts this contention in his writ petition only and· does not advance it in his appeal.

such an offer, Lloyd fails to state the specifics of any such offer, that counsel failed to communicate the offer to him, or he would have accepted a particular plea bargain in light of Mrs. Prevatt's damaging testimony. Finally, he makes no showing that absent the interview he was unaware of Prevatt's proposed testimony, including that she could identify him as the person who was with her grandson hours before the incident. Lloyd has failed to establish a prima facie case for relief.

## DISPOSITION

Judgment affirmed. Writ denied.

Todd, J., and Nares, J., concurred.

Appellant's petition for review by the Supreme Court was denied June 10, 1992.