Filed 5/4/23  P. v. Davison CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>MARCUS BRIAN DAVISON,<br><br>        Defendant and Appellant. | A164371<br><br>(Napa County<br>Super. Ct. No. 21CR001365) |

Marcus Brian Davison appeals from convictions of driving under the influence of alcohol, driving with a .08 percent or higher blood alcohol level, and misdemeanor driving with a suspended driver's license.  He contends the trial court erred in relying on impermissible aggravating factors in imposing an upper term sentence and in imposing fines without determining his ability to pay.  We affirm.

## BACKGROUND

### I.

### *Factual Background*

The incident underlying Davison's present convictions occurred on June 3, 2021.  About 3:30 a.m., Antonio Carrion noticed a car stopped in the

1

middle of the road in front of his house with the brake lights on and a person in the car slumped over to the right. Carrion called the police.

Sheriff's Sergeant Chet Schneider arrived and found the car in the middle of the road with its headlights and brake lights on. Davison was slumped over in the driver's seat, his whole body below the dashboard, and his foot on the brake. The car's engine was running, the automatic shift was in drive and there was a wine bottle on the front passenger seat. Schneider opened the door, reached across Davison and put the car in park. Davison appeared to be asleep. He had a phone in his hand, the screen of which was illuminated. Schneider woke Davison up and, after asking a few questions, removed him from the car and detained him. Davison started to "tip over" and stumble, and Schneider had to use "quite a bit of force or strength to prevent him from hitting the ground." Schneider placed Davison in the back seat of the patrol car and called the California Highway Patrol (CHP) for a DUI investigation.

CHP Officer Randy Brunson arrived at about 4:39 a.m. and took Davison out of the backseat of the sheriff's patrol car to speak with him and perform field sobriety tests. Brunson observed symptoms of alcohol intoxication, including red, watery eyes, slurred speech and swaying, and smelled a strong odor of alcoholic beverage on Davison's breath and person. Davison said he had been driving from Planet Fitness, which was about five miles away, to "a friend's parking lot," and when asked if he knew where he was stopped, said he was "at a school." Davison said he had had one beer and one shot between 8 and 9 p.m. and did not feel their effects. Brunson gave Davison four field sobriety tests and observed signs of impairment. On infield breathalyzer tests, samples taken at 4:55 a.m. and 4:57 a.m. showed blood alcohol levels of 0.114 percent and 0.116, respectively. Brunson

arrested Davison. A blood sample taken at 5:40 a.m. showed a blood alcohol level of 0.123 percent, plus or minus 0.006 percent. The criminalist estimated that for a person of Davison's weight, this blood alcohol level would reflect approximately 6.47 standard drinks.

## II.

### *Trial Court Proceedings*

Davison was charged by information filed on September 2, 2021, with felony counts of driving under the influence of alcohol (DUI) (Veh. Code, § 23152, subd. (a))[1] (count one) and driving with a .08 percent or higher blood alcohol level (§ 23152, subd. (b)) (count two), and a misdemeanor count of driving when his privilege to drive was suspended for a prior DUI conviction (§ 14601.2, subd. (a)) (count three). It was alleged in connection with counts one and two that Davison had a prior felony conviction for DUI causing bodily injury to another person (§ 23153, subd. (b)).

On the first day of trial, November 8, 2021, Davison entered a plea of no contest to count three. On November 10, the jury found him guilty of counts one and two. In a bifurcated bench trial, the court found the prior conviction allegation true.

On January 7, 2022, the court sentenced Davison to the upper term of three years on count one and concurrent terms on counts two and three, stayed pursuant to Penal Code section 654. The court ordered Davison to pay a DUI fine (§ 23550.5) of $2,744, a restitution fine (Pen. Code, § 1202.4) of $300 and a parole revocation fine (Pen. Code, § 1202.45) of $300.

---

[1] Further statutory references will be to the Vehicle Code except as otherwise specified.

3

The court revoked and terminated Post Release Community Supervision (PRCS) in the prior felony DUI case after Davison admitted he was in violation.

## DISCUSSION

### I.

### *Davison Has Not Demonstrated the Upper Term Sentence Was Improperly Imposed.*

#### A. Senate Bill No. 567 (2021–2022 Reg. Sess.)

Prior to January 1, 2022, section 1170, subdivision (b), gave trial courts broad discretion to decide which of the three terms specified for an offense would best serve the interests of justice. (See Pen. Code, § 1170, subd. (b), as amended by Stats. 2020, ch. 29, § 14.) Davison was sentenced on January 7, 2022, just after the effective date of Senate Bill No. 567 (2021–2022 Reg. Sess.), which amended section 1170, subdivision (b) in a number of respects.[2] One of these was to make the middle term of imprisonment the presumptive sentence. (§ 1170, subd. (b)(2); Stats. 2021, ch. 731, § 1.3; *People v. Flores* (2022) 75 Cal.App.5th 495, 500.) Under the amended statute, "[w]hen a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the court shall, in its sound discretion, order imposition of a sentence not to exceed the middle term, except as otherwise provided in paragraph (2)." (§ 1170, subd. (b)(1).) "A trial court may impose an upper term sentence only where there are aggravating circumstances in the crime and the defendant has either stipulated to the facts underlying those circumstances or they have been found true beyond a reasonable doubt.

---

[2] Davison's opening brief states that he was sentenced under the version of Penal Code section 1170 predating the Senate Bill No. 567 (2021–2022 Reg. Sess.) amendments, and argues the amended statute should be applied retroactively to his case. As he was in fact sentenced after the effective date of the amendments, his retroactivity argument is irrelevant.

4

(§ 1170, subd. (b)(1)–(2).)" (*Flores*, at p. 500.) The sentencing court can also rely on certified records of conviction without having to submit the prior convictions to the jury. (*Ibid.*; Pen. Code, § 1170, subd. (b)(3).)

**B. Background**

In a sentencing brief filed on January 3, 2022, and at the hearing, the People acknowledged that under the newly amended Penal Code section 1170, subdivision (b)(2), the aggravating circumstances listed in rule 4.421 of the California Rules of Court[3] could not be relied upon because they had not been stipulated to by Davison or found true beyond a reasonable doubt by the jury. Relying on Penal Code section 1170, subdivision (b)(3), however, the People asked the trial court to impose an aggravated term due to Davison having suffered four prior DUI convictions between February 2019 and August 2020. Three of Davison's priors were misdemeanor violations of section 23152; the August 2020 conviction was the felony violation of section 23153, subdivision (b), alleged in the information and found true by the court.

Defense counsel contested using Davison's prior DUI convictions as aggravating circumstances supporting an upper term sentence, arguing that "[t]he only thing that these prior convictions do, is make this a felony." Pointing out that the present offense "would not even be a felony" if not for the prior DUI convictions, and that Davison had received a low term sentence for his prior felony conviction of DUI causing injury (§ 23153, subd. (b)), which was a more serious offense, defense counsel maintained it would be inappropriate to go from a low term to an aggravated term for the less serious DUI without injury. Counsel argued for probation with an "opportunity in

---

[3] Further references to rules will be to the California Rules of Court.

5

drug court," in order to "break the cycle" by providing Davison with treatment rather than only another sanction.

The trial court first denied probation based on "the record," Davison's failure to comply with the terms of probation, the sentencing report and the nature and seriousness of the present offense. The court explained that while it understood the argument that a noninjury DUI is less significant than an injury DUI when considered "in a vacuum," "[t]here's another argument that having had an injury DUI, any subsequent DUI is more serious." The court commented that it was "only fortuitous that nothing worse happened," as Davison "passed out in the middle of the road, intoxicated to the point where he was asleep with his foot on the brake."

Turning to the choice of sentence, the court stated: "When I look at the triad on this case and whether or not it's a[n] aggravated term, or mitigated term, or the midterm, you take a step back and look at this offense, look at the record, it's an aggravated term case. And notwithstanding the fact that Mr. Davison was on post release community supervision having served a term in prison for injuring someone while under the influence of alcohol, notwithstanding that fact, Mr. Davison has had a number of other convictions for driving under the influence." After noting that Davison would have been advised of the seriousness of DUI offenses in connection with his prior cases and was aware that they are "incredibly dangerous offenses," the court continued: "And the fact that we are here with a fifth DUI conviction in four years, back in court, as it's stated in the criteria affecting probation in [rule 4.421](a)(1). But particularly DUI's that were submitted by the People and sentence will lead this Court to in Count One, to impose the aggravated term of three years. [¶] Not that it's a step up from the prior offense, but

6

it's—given the seriousness of the pattern of number of DUI's, the warnings, the grants of probation, the opportunities, it is the only reasonable term."

### C. Analysis

Davison contends that the trial court's remarks demonstrate it relied not only on the permissible circumstance that he had prior DUI convictions but also on impermissible circumstances—the seriousness of the present offense, the fact that Davison committed the present offense while on PRCS and "the warnings, the grants of probation, the opportunities" Davison had received in connection with his prior cases. The People argue that Davison forfeited this argument by failing to object on this ground in the trial court. On the merits, the People read the court's remarks as demonstrating it relied "solely" on the prior convictions.

#### 1. *Forfeiture*

The People are correct that defense counsel did not object that the trial court relied in part on impermissible factors in choosing to impose the aggravated term. The forfeiture doctrine applies to claims "involving the trial court's failure to properly make or articulate its discretionary sentencing choices." (*People v. Scott* (1994) 9 Cal.4th 331, 353.)

Davison does not dispute this point, but argues that the failure to object constituted ineffective assistance of counsel. Accordingly, we turn to that argument.

#### 2. *Ineffective assistance of counsel*

"When challenging a conviction on grounds of ineffective assistance, the defendant must demonstrate counsel's inadequacy. To satisfy this burden, the defendant must first show counsel's performance was deficient, in that it fell below an objective standard of reasonableness under prevailing professional norms. Second, the defendant must show resulting prejudice,

7

i.e., a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different." (*People v. Mai* (2013) 57 Cal.4th 986, 1009.) " ' "A reasonable probability is a probability sufficient to undermine confidence in the outcome." [Citations].' [Citations]." (*People v. Hart* (1999) 20 Cal.4th 546, 624.)

"When examining an ineffective assistance claim, a reviewing court defers to counsel's reasonable tactical decisions, and there is a presumption counsel acted within the wide range of reasonable professional assistance. It is particularly difficult to prevail on an *appellate* claim of ineffective assistance. On direct appeal, a conviction will be reversed for ineffective assistance only if (1) the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation." (*People v. Mai, supra,* 57 Cal.4th at p. 1009.)

Davison contends that since defense counsel argued that Senate Bill No. 567 (2021–2022 Reg. Sess.) did not authorize imposition of an aggravated term based on his prior convictions, counsel could not have had any tactical reason for failing to object to the court's reference to impermissible aggravating circumstances. He maintains he was prejudiced because there is a "significant likelihood" the court would not have imposed the upper term if counsel had objected on this basis, although he does not explain why this is the case. The People, by contrast, maintain counsel could reasonably have concluded there was no basis for objection because the trial court based its decision solely on the permissible aggravating factor of Davison's prior DUI convictions.

Several points support the People's view. First, defense counsel knew the trial court was aware that the recent amendments to Penal Code

section 1170 precluded it from basing an upper term sentence on aggravating circumstances that were neither stipulated to by the defendant nor found beyond a reasonable doubt by the jury, with the exception of prior convictions. The People's sentencing brief directly stated that "the circumstances in aggravation under Rule 4.421(a)(1) were not stipulated to by the defendant, nor determined by a jury" and could not be considered, but asked the court to impose the aggravated term based on Davison's prior convictions, and the parties addressed the applicability of the prior conviction exception in argument at the sentencing hearing. Defense counsel thus had reason to believe the trial court knew which aggravating circumstances it could, and could not, properly rely upon.

Second, at the two points when the court directly referred to reasons for its decision, it specified the prior convictions. Immediately after saying "it's an aggravated term case," the court stated that "notwithstanding" the fact that Davison was on PRCS, he "has had a number of other" DUI convictions—thus implying the court was relying on the prior convictions, not Davison's PRCS status. Then, after discussing the seriousness of the offense, the court said, "But particularly DUI's that were submitted by the People and sentence will lead this Court to in Count One, to impose the aggravated term of three years."

Additionally, the court's remarks about the seriousness of the offense appear to have been linked to defense counsel's argument that Davison should be granted probation due to the less serious nature of the present offense compared to his prior injury DUI. This link is inferable from the court's comment, "[n]ot that it's a step up from the prior offense," and its reference to "(a)(1)" of the "criteria affecting probation" (rule 4.414(a)(1) ["The

9

nature, seriousness, and circumstances of the crime as compared to other instances of the same crime"].)

The court's remarks were not entirely unambiguous. For example, the court's statement that "given the seriousness of the pattern of number of DUI's, the warnings, the grants of probation, the opportunities, it is the only reasonable term" can be read as suggesting these factors played a role in its selection of the aggravated term as well as its denial of probation. Nevertheless, given that the court had just heard arguments specifically addressing the requirements of the amended Penal Code section 1170, the court's remarks as a whole indicate that despite its clear concern with Davison's failure to address his dangerous conduct, the decision to impose the upper term sentence was based on the fact that the current DUI conviction was preceded by four prior DUI convictions in a period of only four years.

In any event, we need not determine whether defense counsel's failure to object amounted to deficient representation. " '[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.' " (*In re Champion* (2014) 58 Cal.4th 965, 1007, quoting *Strickland v. Washington* (1984) 466 U.S. 668, 697.) That is plainly the case here.

As we have said, Davison offers no explanation for his assertion that there is a significant likelihood the trial court would not have imposed the upper term if defense counsel had argued some of the aggravating factors the court relied on were impermissible.[4] "A defendant must prove prejudice that

_____

[4] Davison relies on the statement in *People v. Howard* (1987) 190 Cal.App.3d 41, 48, that "[i]n statistical terms, . . . *Strickland* requires a

10

is a ' "demonstrable reality," not simply speculation.' " (*People v. Fairbank* (1997) 16 Cal.4th 1223, 1241, quoting *People v. Williams* (1988) 44 Cal.3d 883, 937.)

Here, whatever ambiguity there might be as to whether the trial court in fact relied *solely* on Davison's prior DUI convictions in imposing the upper term, there is clearly no reasonable probability the court would have imposed a lesser term if counsel had argued the court was not permitted to consider any of the other factors the court mentioned. The court's remarks made clear that the prior convictions were at least the primary basis of its decision ("But particularly DUI's that were submitted by the People . . . will lead this Court to . . . impose the aggravated term"). Although the court was sympathetic to defense counsel's argument that Davison needed treatment, it gave absolutely no indication it would consider less than an upper term sentence—because Davison had so many DUI convictions in such a short period of time. We see no basis in the record for concluding there is any probability of a more favorable result if counsel had objected to the basis of the trial court's decision.

## II.

### *Davison's Challenge to the Fines Was Forfeited.*

Relying on *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*), Davison contends his constitutional right to due process was violated by the trial court's imposition of a $300 restitution fine and $2,744 DUI fine without a determination that he was presently able to pay. *Dueñas* held that the constitutional guarantees of due process and equal protection forbid a trial court from imposing a court operations assessment (§ 1465.8) or court

---

significant but something-less-than-50 percent likelihood of a more favorable verdict." We are aware of no published case that has cited or followed *Howard* for this statement of the test for prejudice.

facilities assessment (Gov. Code, § 70373), or executed restitution fine (§ 1202.4), without first determining the defendant's ability to pay. (*Dueñas,* at p. 1164.) Subsequent decisions have taken a variety of approaches, some following *Dueñas,* some disagreeing with its analysis in whole or in part, some applying different analytical frameworks, and some distinguishing *Dueñas* factually. (*People v. Montes* (2021) 59 Cal.App.5th 1107, 1116; *People v. Cowan* (2020) 47 Cal.App.5th 32, 41-45, review granted June 17, 2020, S261952.) The question whether a court must consider a defendant's ability to pay before imposing fines, fees, and assessments is currently before the California Supreme Court in *People v. Kopp* (2019) 38 Cal.App.5th 47 (*Kopp*), review granted November 13, 2019, S257844.

## A. Davison's Failure to Object to the Fines Forfeited the Issue.

It is the defendant's burden to raise the issue of inability to pay fines, fees and assessments and to present evidence of his or her inability to pay. (*People v. Castellano* (2019) 33 Cal.App.5th 485, 490.) Davison acknowledges that his attorney did not object to imposition of the fines. He argues his claim is cognizable on appeal, however, because imposition of the fines without an ability to pay determination is an error of law and affects his substantial rights. Davison argues he is not challenging an exercise of the court's discretion, which would be subject to the forfeiture rule (*People v. Wall* (2017) 3 Cal.5th 1048, 1075 ["defendant forfeits on appeal any 'claims involving the trial court's failure to properly make or articulate its discretionary sentencing choices' in the absence of objection below"]), but rather raising a cognizable legal claim.

"In general, a defendant who fails to object to the imposition of fines, fees, and assessments at sentencing forfeits the right to challenge those fines, fees, and assessments on appeal." (*People v. Greeley* (2021) 70 Cal.App.5th 609, 624; *People v. Aguilar* (2015) 60 Cal.4th 862, 864.) Davison cites *In re*

12

*Sheena K.* (2007) 40 Cal.4th 875, 887 (*Sheena K.*), in support of his characterization of his challenge to the fees as a legal claim. *Sheena K.* held that the forfeiture rule does not apply to a claim that a probation condition is unconstitutionally overbroad or vague that is "capable of correction without reference to the particular sentencing record" and therefore presents a "pure question of law." (*Ibid*.) We do not agree that a *Dueñas* challenge to court-imposed costs is similarly capable of resolution without reference to the factual record. Indeed, various cases have distinguished *Dueñas* on its facts. (E.g., *People v. Lowery* (2020) 43 Cal.App.5th 1046, 1053-1057 [disagreeing with assertions that *Dueñas* claim "raises a pure question of constitutional law that involves no factual dispute" and distinguishing its facts]; *People v. Caceres* (2019) 39 Cal.App.5th 917, 928 [declining to apply *Dueñas*'s "broad holding requiring trial courts in all cases to determine a defendant's ability to pay before imposing court assessments or restitution fines"]; *People v. Johnson* (2019) 35 Cal.App.5th 134, 139-140 [costs imposed "did not saddle Johnson with a financial burden anything like the inescapable, government-imposed debt-trap Velia Dueñas faced"].) Even as Davison describes it, his claim—that "the trial court could not lawfully impose these costs on an indigent defendant without first determining his or her ability to pay"—at a minimum requires a factual determination whether he is indigent. And the ability to pay determination necessarily entails consideration of the facts of a defendant's financial circumstances.

Davison asks us to exercise our discretion to reach his claim even if we deem it forfeited, because it affects his due process rights to a fair trial. (*Sheena K.,* at p. 887, fn. 7 ["appellate courts typically have engaged in discretionary review only when a forfeited claim involves an important issue of constitutional law or a substantial right"].) We decline to do so. The

13

purpose of the forfeiture rule " 'is to encourage parties to bring errors to the attention of the trial court, so that they may be corrected.' " (*Sheena K., supra,* 40 Cal.4th at p. 881, quoting *In re S.B.* (2004) 32 Cal.4th 1287, 1293.) *Dueñas* was decided in January 2019, a full three years before Davison's sentencing hearing. Nothing prevented Davison from claiming in the trial court that imposition of the restitution and DUI fines violated his due process rights because he did not have the ability to pay them. The claim depends in part on factual issues that could have been addressed in the trial court if it had been raised and cannot be resolved by this court. "[T]he appellate court's discretion to excuse forfeiture should be exercised rarely . . . ." (*In re S.B.,* at p. 1293.) The rule would serve no purpose if failure to raise issues in the trial court are routinely excused.

## B. Davison Has Not Demonstrated Ineffective Assistance of Counsel.

Davison contends his attorney's failure to raise the issue of his ability to pay the restitution and DUI fines constituted ineffective assistance of counsel. He maintains there could not have been a tactical reason for failing to object to the fines, as doing so would only have helped him, and urges the only explanation for counsel's failure is ignorance of *Dueñas.*

The California Supreme Court has "repeatedly stressed 'that "[if] the record on appeal sheds no light on why counsel acted or failed to act in the manner challenged[,] . . . unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation," the claim on appeal must be rejected.' " (*People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266, quoting *People v. Wilson* (1992) 3 Cal.4th 926, 936.) "A claim of ineffective assistance in such a case is more appropriately decided in a habeas corpus proceeding." (*Mendoza Tello,* at pp. 266-267.) Here, the record gives no indication why counsel did not object

14

to fines. It does, however, support an inference that counsel may have believed objection to be futile. "Counsel is not required to proffer futile objections." (*People v. Anderson* (2001) 25 Cal.4th 543, 569.)

Davison's argument that there could be no explanation for counsel's failure to object is based on his view that it was apparent he lacked the ability to pay the fines. Specifically, he maintains that his indigency was demonstrated by the fact that he was appointed counsel at trial and on appeal and by statements in the probation report that he was unemployed and living in his car at the time of his arrest.[5]

That Davison was (and is) represented by appointed counsel, "while not determinative, entitles him 'to a presumption of indigence for most purposes.' " (*People v. Santos* (2019) 38 Cal.App.5th 923, 933, quoting *People v. Rodriguez* (2019) 34 Cal.App.5th 641, 645.) But determination of a defendant's ability to pay is not limited to ability at the time of sentencing: The trial court may consider ability to pay in the future, including from prison wages and/or earnings after release from custody. (*People v. Lowery, supra,* 43 Cal.App.5th at pp. 1060-1061; *People v. Aviles* (2019) 39 Cal.App.5th 1055, 1076 (*Aviles*); *Santos*, at p. 934.) The record does not suggest Davison is incapable of earning money. At the time of sentencing, he was 28 years old, a high school graduate with 1.5 years of community college. The probation report states he had asthma, for which he did not take medication, and anxiety and depression, for which he was prescribed medication, but does not indicate any medical or psychological condition that would make employment untenable. After being released from prison in February 2021, Davison had been "working under the table doing odd jobs,"

---

[5] Davison also states that there were many references to his homelessness at trial but provides no citations to the record.

and he "admitted he continue[d] to drive without a valid driver's license because he 'has to work.' " He reported being "sporadically employed with various temp agencies prior to his arrest."

Davison argues that courts' "presumption" that inmates will be able to pay fines and fees from prison wages is disproven by a 2018 Legislative Analyst's report.[6] The report discusses the number of inmates actually working in prison employment programs and, from the numbers reported, Davison concludes there is a "roughly *ninety percent* unemployment rate in California prisons," making it highly unlikely he would be able to find employment in prison. Even putting aside this unlikelihood, Davison argues that based on prison wage amounts and amounts deducted by the California Department of Corrections and Rehabilitation, it would take him over 42 years to pay the fines imposed in this case.

Several cases have recognized that prison wages are not a certainty and, while potential prison wages may be considered, the possibility of such wages "does not foreclose an inability to pay showing." (*People v. Taylor* (2019) 43 Cal.App.5th 390, 402; *People v. Montes, supra,* 59 Cal.App.5th at p. 1123; *People v. Son* (2020) 49 Cal.App.5th 565, 591.) "Not all inmates are able to work, due to their own limitations or to prison restrictions, and 'not all inmates [who work] are eligible for paid positions, which are considered a privilege and are subject to various restrictions and requirements.' (*Son, supra*, at p. 591, citing Cal. Code Regs., tit. 15, §§ 3040, 3041.1.)" (*Montes,* at p. 1123.)

Still, even disregarding the potential for Davison to pay his fines from prison wages, the potential for earning after release from prison is an obvious

---

[6] Legis. Analyst, The 2018-2019 Budget: Governor's Criminal Justice Proposals (Feb. 27, 2018) p. 14 <https://lao.ca.gov/reports/2018/3762/2018-19-crim-justice-proposals-022818.pdf> (as of May 4, 2023).

consideration where a 28 year old is sentenced to a three-year prison term. Davison's felony record will no doubt complicate future efforts to find employment, but it does not foreclose the possibility. Davison's reported ability to find "odd jobs" during the short time he was out of prison before the present offense demonstrates he has at least some ability to earn income from which he could pay the fines.

Additionally, by the time of the sentencing hearing in January 2022, various courts had rejected *Dueñas's* due process analysis in favor of analysis under the excessive fines clause of the Eighth Amendment of the federal Constitution and article I, section 17 of the California Constitution, at least with respect to *fines*, which are intended to be a form of punishment (*Kopp, supra,* 38 Cal.App.5th at pp. 96-97, review granted Nov. 13, 2019, S257844), if not all costs imposed at sentencing (e.g., *People v. Cowan, supra,* 47 Cal.App.5th at p. 42; *Aviles, supra,* 39 Cal.App.5th at p. 1071.) Under the excessive fines analysis, ability to pay is only one of several factors to be considered, along with "the defendant's culpability," "the relationship between the harm and the penalty," and "the penalties imposed in similar statutes." (*Kopp,* at pp. 97-98; *Aviles,* at p. 1070.) In the view of these courts, "there is no due process requirement that the court hold an ability to pay hearing before imposing a punitive fine and only impose the fine if it determines the defendant can afford to pay it." (*Kopp,* at pp. 96-97.) The costs imposed on Davison were fines, not nonpunitive fees or assessments imposed pursuant to the "comprehensive scheme" that, prior to recent statutory amendments, imposed "numerous fees in civil and criminal proceedings to fund California's courts."[7] (*People v. Belloso* (2019)

---

[7] Assembly Bill No. 1869 (2019–2020 Reg. Sess.) operative July 1, 2021 (Stats. 2020, ch. 92, §§ 1, 2, 11, 62), and Assembly Bill No. 177 (2021–2022

42 Cal.App.5th 647, 661, review granted Mar. 11, 2020, S259755; *Dueñas, supra,* 30 Cal.App.5th at p. 1165.)

Considering that the costs at issue were fines, the uncertain state of the caselaw, the likelihood the court would consider Davison's future earning potential as well as his current financial circumstances, and the court's expressed view of Davison's culpability and danger he posed to the public by repeatedly driving under the influence, counsel reasonably could have believed objection to the fines would be futile.

## DISPOSITION

The judgment is affirmed.

---

Reg. Sess.) operative January 1, 2022 (Stats. 2021, ch. 257, §§ 1, 2, 35), eliminated many fees and assessments that previously had been imposed on criminal defendants. (See Pen. Code, § 1465.9, Gov. Code, § 6111.)

_____

                                        STEWART, P.J.



We concur.



_____

RICHMAN, J.



_____

MARKMAN, J. *








*People v. Davison* (A164371)




_____

   * Judge of the Alameda Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.