Filed 4/22/14  P. v. Sterni CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>MICHAEL STERNI,<br><br>        Defendant and Appellant. | C071798<br><br>(Super. Ct. No. SF118322A) |

        A jury found defendant Michael Sterni guilty of resisting an executive officer (Pen. Code, § 69),[1] and found he had a prior serious felony (§ 1170.12, subd. (b)/667, subd. (d)).  The trial court sentenced him to six years in prison (the upper term, doubled).  On appeal, defendant contends the trial court erred in denying him the opportunity to be

---

[1] Further undesignated statutory references are to the Penal Code.

heard on a *Marsden*[2] motion and in denying his motion to strike his strike pursuant to *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*). He further contends there is insufficient evidence to support his conviction for resisting. Disagreeing, we shall affirm.

## FACTS

*The Crime*

Defendant lived across the street from a construction site. The day before the incident that led to the resisting charge, defendant was involved in a different incident at the site. Due to this incident, James Rhodes was hired as a security guard at the site.

On August 31, 2011, defendant stepped out of his house, wearing boxer shorts and a tank top, and pointed at the construction site. The construction workers identified him to Rhodes as the instigator from the incident the previous day. Defendant went inside his house and then emerged wearing long shorts and a T-shirt. He walked down the sidewalk, talking and pointing; his speech was rambling. Defendant walked quickly and appeared angry and aggressive. He had something in his back pocket.

Defendant said to Rhodes: " 'What are you guys doing up there? You have no right to be up there.' " Rhodes told him he could not enter private property and the site was dangerous due to the equipment present. Defendant responded, " 'You just wait and see.' " Just then, Rhodes saw a police officer, Jon Scofield, driving down the street and motioned him over. As Scofield got out of his car, Rhodes and defendant continued to exchange words. Rhodes told defendant he could not come on the site and defendant replied, " 'I'm going to show you.' " Rhodes noticed that defendant had a large knife--"a machete"--in his pocket and was "fidgety."

---

[2] *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*).

Rhodes explained to Scofield that defendant had disrupted the site the day before and that he had a large knife. Rhodes told Scofield, " 'He's over here disrupting the work site right now, and I directed him to leave the work site, but he's not listening.' "

Scofield felt the need to investigate. Defendant began to walk away, but Scofield told him to " 'come here' " and asked what defendant had. Scofield approached defendant and defendant slapped him away.[3] Scofield and defendant began to " 'tussle' " and defendant went for Scofield's gun. Rhodes grabbed defendant's knife and tossed it away. Defendant pushed Scofield into the patrol car and Scofield fell to the ground. Rhodes grabbed defendant and pinned him to the car. Other officers arrived and defendant continued to struggle. Finally, the officers used a taser on defendant.

Defendant's knife was 14 inches long, with an eight-inch blade.

Scofield was injured from being thrown into the car; his neck and shoulder were numb. He went to the hospital and was off work for a month.

*Defendant's Mental Health and* Marsden *Issues*

About a week after the offense, defendant's counsel declared a doubt as to defendant's competency. At that time defendant declared he would like to " 'go pro per.' " The court appointed two doctors to evaluate defendant. Defendant refused to speak to the psychiatrist. The psychologist recommended that defendant be found incompetent to stand trial and be treated with antipsychotic medication.

Through counsel defendant requested a *Marsden* hearing. Defendant claimed he wanted to "go pro per" and cited problems he had with the law library. He felt his attorney was good, but due to "outside pressures" she would not act in his best interest. The court denied the *Marsden* motion and ordered defendant evaluated for medication review.

---

[3] Scofield testified he grabbed defendant's shirt.

At the competency trial, defendant said he did not want his attorney to represent him because she misled him. The court held a *Marsden* hearing. Defendant complained he did not trust his lawyer because she had misrepresented him on a prior conservatorship. Defendant wanted to "go pro per." The court told him it had no jurisdiction since the case had been suspended. The court denied the *Marsden* motion. Defendant continued to say he did not want counsel to represent him and was removed from the courtroom. The court found him incompetent to stand trial. He was committed to Napa State Hospital.

At the next hearing (addressing defendant's need for medication), defendant bought another a *Marsden* motion, which was denied. Defendant was again removed from the courtroom for being disruptive. The court found forced medication of defendant was constitutionally permissible and appropriate.

In March 2012, the court found defendant had been restored to competency. Defendant continued to bring *Marsden* motions. In April, he noted his problems with the Public Defender's Office. In May, he repeated his complaints. The court suggested medication would help defendant focus and told him that representing himself was a "disaster of an idea."

On June 15, 2012, just before trial, defendant brought his fifth *Marsden* motion. The court noted that the problem appeared to be with defendant; he would not be happy with any lawyer. Defendant complained his attorney would not secure him release on his own recognizance. The court observed, "it's almost impossible for anyone to get along with you." The court denied the motion.

The first day of trial, defendant sought a continuance to hire a different attorney. After learning that defendant's mother had not spoken to an attorney since December, the court denied the request for a continuance. In the middle of trial, during a discussion of jury instructions, the court removed defendant for being disruptive. Defendant repeatedly interrupted, complaining he did not understand what was going on.

4

Defendant returned after a recess and his counsel informed the court that defendant wished to make a motion to represent himself. Defendant said he really wanted to hire a different attorney. After ascertaining that defendant did not have an attorney lined up to hire, the court asked him if he wanted to represent himself. Defendant said he "wanted to have a *Marsden* hearing to get a different attorney." The court interrupted, saying, "We have already had the *Marsden*." "I'm not going to give you one in the middle of the trial." When defendant tried to put "on the record" that he had had problems with the public defender's office and his specific attorney, the court responded, "We are not going to have anything more on that issue."

The court continued to question defendant as to whether he wanted to represent himself and told him that he could not represent himself *and* keep his current attorney. Defendant explained he was not able to represent himself because he had problems with access to the law library. The court explained the importance of having an attorney, especially for technical issues such as jury instructions. Defendant agreed, but said his lawyer did not talk to him and then he got paranoid. He added that although he had told his lawyers that Scofield's testimony conflicted with Rhodes' testimony at the preliminary hearing (Rhodes had not yet testified at trial), his lawyer did not ask the questions he raised. Because his attorney did not explain everything, defendant thought she might be working against him. The court assured him that she was not. Defendant asked to talk to his attorney and the court granted a recess. After the recess, defendant asked if there was a way to resolve the case. The People made two offers. Defendant rejected both offers and decided to keep his attorney.

# DISCUSSION

## I

### *Failure to Hold a Marsden Hearing*

Defendant contends the trial court erred in refusing to allow him to be heard on his seventh *Marsden* motion. Defendant asserts the error requires reversal because absent the opportunity to be heard, it is impossible to assess prejudice.

A. *The Law*

"When a defendant seeks substitution of appointed counsel pursuant to [*Marsden*], 'the trial court must permit the defendant to explain the basis of his contention and to relate specific instances of inadequate performance. A defendant is entitled to relief if the record clearly shows that the appointed counsel is not providing adequate representation or that defendant and counsel have become embroiled in such an irreconcilable conflict that ineffective representation is likely to result.' [Citations.]" (*People v. Taylor* (2010) 48 Cal.4th 574, 599 (*Taylor*).) "[A] judge cannot base his disposition of a request for substitution of counsel on his or her own confidence in the current attorney and observations of that attorney's previous demonstrations of courtroom skill. [Citations.] Instead, the court must inquire on the record into the bases of defendant's complaints and afford him an opportunity to relate specific instances of his attorney's asserted inadequacy. [Citations.]" (*People v. Hill* (1983) 148 Cal.App.3d 744, 753 (*Hill*).)

No "proper and formal legal motion" is required; defendant need only express a "clear indication" that he wants a substitution of counsel. (*People v. Lucky* (1988) 45 Cal.3d 259, 281, fn. 8.) "Mere grumbling" about counsel's failures is insufficient to invoke a *Marsden* hearing. (*People v. Lee* (2002) 95 Cal.App.4th 772, 780.) A disagreement over trial tactics is insufficient to compel substitution of counsel, "unless it signals a complete breakdown in the attorney-client relationship." (*People v. Crandell*

6

(1988) 46 Cal.3d 833, 859-860, disapproved on another point in *People v. Crayton* (2002) 28 Cal.4th 346, 364-365.)

"A criminal defendant is entitled to raise his or her dissatisfaction with counsel *at any point in the trial* when it becomes clear that the defendant's right to effective legal representation has been compromised by a deteriorating attorney-client relationship." (*People v. Roldan* (2005) 35 Cal.4th 646, 681 (*Roldan*), italics added, disapproved on other grounds in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22.)

"We review the denial of a *Marsden* motion for abuse of discretion. [Citation.] Denial is not an abuse of discretion 'unless the defendant has shown that a failure to replace counsel would substantially impair the defendant's right to assistance of counsel.' [Citation.]" (*Taylor, supra,* 48 Cal.4th at p. 599.) Where the trial court fails to make an adequate inquiry, however, the "usual case" requires reversal. (*People v. Lopez* (2008) 168 Cal.App.4th 801, 815 (*Lopez*).) This "error is typically treated as prejudicial per se, since the very nature of the error precludes meaningful appellate review of its prejudicial impact. [Citations.]" (*Hill, supra,* 148 Cal.App.4th at p. 755.) In some cases, a limited remand for further *Marsden* inquiry is appropriate where the record otherwise is free from error. (*Lopez, supra,* 168 Cal.App.4th at p. 815; *People v. Olivencia* (1988) 204 Cal.App.3d 1391, 1400-1402; *People v. Minor* (1980) 104 Cal.App.3d 194, 199-200.)

B. *Analysis*

A defendant may make a *Marsden* motion "at any point in the trial." (*Roldan, supra,* 35 Cal.4th at p. 681.) Thus it was error for the trial court to tell defendant he could not have a *Marsden* hearing in the middle of trial because he had already had several. The discussion, however, did not end there. As he had in prior *Marsden* hearings, and in other outbursts and disruptions, defendant spoke his mind. He set forth his problems at trial. The first problem he related was access to the law library. Then he explained his problems with counsel. She did not talk to him about what was going on in

7

the trial. As a result, he got "a little bit paranoid." He complained that counsel did not ask the questions he wanted asked. He realized "she might have a professional opinion" why she did not want to ask these questions, but she did not give him a reason or an explanation. Defendant asked if he could have five minutes to talk to his attorney about "where she's at in this case," explaining, "Because I'm completely blind." The court granted a recess. After consulting with his counsel, defendant expressed the desire to continue with her representing her.

Defendant's fundamental problem with counsel was a lack of communication. He recognized that counsel might have a good reason for pursuing trial tactics with which he disagreed. The communication problem was apparently solved by a recess, giving defendant the chance to talk to his attorney. Defendant failed to articulate--or even suggest--any inadequate representation by counsel. Resolving the question of the adequacy of representation is the purpose of the *Marsden* procedure. (See *Marsden, supra,* 2 Cal.3d at p. 123.)

Because defendant *did* have the opportunity to relate the reasons for his dissatisfaction with counsel, and the problems were either resolved or did not relate to inadequate representation, there was no prejudicial error in the trial court's handling of defendant's request for a *Marsden* hearing.

II

*Sufficiency of Evidence of Forcible Resistance*

Defendant contends there was insufficient evidence to sustain his conviction for violating section 69. He contends Scofield was not engaged in the lawful performance of his duties because his detention of defendant was unlawful. Specifically, he contends there was insufficient evidence that Scofield had a subjective suspicion that defendant was involved in any criminal activity.

8

A.  *The Law*

"In assessing the sufficiency of the evidence, we review the entire record in the light most favorable to the judgment to determine whether it discloses evidence that is reasonable, credible, and of solid value such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.  [Citations.]  Reversal on this ground is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].'  [Citation.]" (*People v. Bolin* (1998) 18 Cal.4th 297, 331.)

Section 69 provides in part: "Every person who attempts, by means of any threat or violence, to deter or prevent an executive officer from performing any duty imposed upon such officer by law, or who knowingly resists, by the use of force or violence, such officer, in the performance of his duty, is punishable . . . ."  The term "executive officer" includes a police officer.  (*In re Manuel G.* (1997) 16 Cal.4th 805, 818-819 (*Manuel G.*).)

An officer is not "engaged in the performance of his duties" unless he was acting lawfully at the time of the offense against him.  (*Manuel G., supra,* 16 Cal.4th at p. 815.) Here Scofield was detaining defendant for investigation.  "[I]n order to justify an investigative stop or detention the circumstances known or apparent to the officer must include specific and articulable facts causing him to suspect that (1) some activity relating to crime has taken place or is occurring or about to occur, and (2) the person he intends to stop or detain is involved in that activity." (*In re Tony C*. (1978) 21 Cal.3d 888, 893.)[4]

---

[4]  Under federal law, the suspicion need be only objectively reasonable. (*People v. Lloyd* (1992) 4 Cal.App.4th 724, 733.)  This federal (objective) standard applies in California only in situations where the remedy is suppression of evidence. (*In re Lance W.* (1985) 37 Cal.3d 873, 896.)  That is not the situation here.

B. *Analysis*

Defendant's claim of insufficient evidence is based on Scofield's testimony on cross-examination. Scofield testified it was not unlawful to carry a knife, nothing about seeing the handle of the knife caused him to suspect illegal activity, and he had received no information that defendant had committed a crime. Scofield agreed with counsel that "in that situation, when somebody has not done something unlawfully" they were "allowed to walk away," but when he asked defendant to come to him and defendant did not comply he had approached defendant and grabbed his shirt.

While this evidence alone does not support a finding that Scofield suspected that defendant was involved in criminal activity when he detained him, other evidence did show that Scofield decided to investigate because he suspected defendant was involved or about to be involved in trespass or other criminal activity. Rhodes had told Scofield that defendant had disrupted the construction site the day before, that defendant had a large knife, that defendant was disrupting the work site " 'right now,' " and that defendant was asked to leave the work site but refused. As Scofield was getting out of his car, Rhodes was telling defendant, " 'You can't come on the property.' "

Scofield and Rhodes testified to somewhat differing accounts of the same incident, 10 months after their involvement in it. The jury could accept the version of events offered by Rhodes and find, from Rhodes's testimony, that Scofield *did* suspect defendant was involved in criminal activity and that his suspicion was objectively reasonable. "In deciding the sufficiency of the evidence, a reviewing court resolves neither credibility issues nor evidentiary conflicts. [Citation.] Resolution of conflicts and inconsistencies in the testimony is the exclusive province of the trier of fact. [Citation.] Moreover, unless the testimony is physically impossible or inherently improbable, testimony of a single witness is sufficient to support a conviction. [Citation.]" (*People v. Young* (2005) 34 Cal.4th 1149, 1181.)

Substantial evidence supports the conviction.

10

III

*Romero Motion*

Defendant contends the trial court abused its discretion in denying his *Romero* motion. He contends the court erred in relying solely on defendant's criminal history and the current offense and in failing to consider his mental health issues when it declined to strike his strike.

A. *Background*

After the jury found the allegation of a serious prior felony true, the court expressed its intention to refer the matter for a probation report. The defense indicated it wanted to file a *Romero* motion, and would like the probation report before filing the motion. Defendant, on the other hand, asked to be sentenced that day. The court stated that it was possible to sentence him that same day, although "a bad idea." Defense counsel wanted time to make the motion; she believed defendant's family could provide useful information about his training and employment. Defendant insisted that he wanted to be sentenced that day, that he was "not even worried about it," and that he was willing to waive the referral to probation for a pre-sentencing report.

Defense counsel then made an oral *Romero* motion. She noted that defendant's strike was 18 years old; while he had a subsequent felony, he had no convictions subsequent to 1997. Any time he had served after 1997 was served in state mental hospitals. Defendant was found incompetent a week after the current offense and served time in Napa State Hospital. She argued "some mental aspects . . . played into what happened on August 31st." If the trial court declined to strike defendant's strike, counsel argued for the low term.

The trial court denied the *Romero* motion. It noted that defendant's strike was assault with a firearm in 1994. In 1997, he had a felony conviction for a violation of section 273.5. The court found the current offense "very violent," "very serious," and "potentially an extremely dangerous crime" as it appeared to involve an attempt to take

11

the officer's firearm. The court concluded it was not appropriate to strike defendant's strike because this case "is exactly the case that the voters and the legislature had in mind when the three strikes law was passed."

B. *The Law*

A trial court has discretion under the three strikes law to dismiss prior conviction findings in the furtherance of justice. (§ 1385, subd. (a); *Romero, supra*, 13 Cal.4th at pp. 529-530.) In exercising this power, the trial court "must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams* (1998) 17 Cal.4th 148, 161.)

We give deference to the trial court's exercise of its discretion; we will not reverse the court's denial of a *Romero* motion "unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*People v. Carmony* (2004) 33 Cal.4th 367, 377.) The three strikes law "not only establishes a sentencing norm, it carefully circumscribes the trial court's power to depart from this norm and requires the court to explicitly justify its decision to do so. In doing so, the law creates a strong presumption that any sentence that conforms to these sentencing norms is both rational and proper. [¶] In light of this presumption, a trial court will only abuse its discretion in failing to strike a prior felony conviction allegation in limited circumstances," such as where the court was not aware of its discretion or considered impermissible factors. (*Id*. at p. 378.) Only in "extraordinary" circumstances, "where no reasonable people could disagree that the criminal falls outside the spirit of the three strikes scheme," would the trial court's failure to strike a strike constitute an abuse of discretion. (*Ibid*.)

C. *Analysis*

Here, the trial court was plainly aware of its discretion and balanced the factors before it. While defendant's strike was old, strikes "are taken into account regardless of their age." (*Romero, supra,* 13 Cal.4th at p. 505.) The trial court recognized the age of defendant's strike but also considered defendant's continuing violent behavior. A trial court does not abuse its discretion by declining to strike a remote strike where defendant continues to offend. (See *People v. Strong* (2001) 87 Cal.App.4th 328, 338-340, and cases cited.)

Defendant argues the trial court failed to consider the individualized particulars of his "background, character and prospects," particularly his mental health issues.[5] This information, however, was not before the court because defendant insisted on immediate sentencing. He waived preparation of a probation report, which would have provided such information about him. It is the defendant's burden to provide the trial court with evidence to support his *Romero* motion. (*People v. Lee* (2008) 161 Cal.App.4th 124, 129.) Unsworn statements of counsel are not evidence. (*People v.* Wallace (2004) 33 Cal.4th 738, 754, fn. 3.) His demand for immediate sentencing meant that counsel did not have the opportunity to present witnesses and other evidence in support of the *Romero* motion. Defendant was warned that immediate sentencing was a bad idea and his counsel explained the need for additional time. Nonetheless, defendant continued to insist that he be sentenced immediately, expressing that he was "not worried" and that he was "going to go for appeal [*sic*] anyway." The trial court, without objection from defendant's counsel, acquiesced in defendant's demand.[6] Having prevented the

---

[5] The sentencing judge had not presided over proceedings related to defendant's competency.

[6] On appeal, defendant does not challenge the actions of either the trial court or his trial counsel in this regard.

presentation of any evidence of his "background, character and prospects," defendant cannot now object that the court erred in failing to consider such evidence. (Cf. *People v. Gutierrez* (2002) 28 Cal.4th 1083, 1139 [doctrine of invited error barred defendant from challenging on appeal the trial court's admission of evidence that was first elicited by defendant].)

## DISPOSITION

The judgment is affirmed.


      DUARTE      , J.


We concur:


      BLEASE      , Acting P. J.


      HOCH      , J.

14