Filed 4/21/14  In re J.A. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re J.A., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE, | |
| Plaintiff and Respondent, | E058968 |
| v. | (Super.Ct.No. J248161) |
| J.A., | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Brian Saunders, Judge.  Affirmed.

Jeanine G. Strong, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland and Kathryn Kirschbaum, Deputy Attorneys General, for Plaintiff and Respondent.

1

A juvenile wardship petition was filed alleging that defendant and appellant J.A. (minor) committed the offense of resisting a peace officer in the discharge of his duties. (Pen. Code, § 148, subd. (a)(1).) A juvenile court found the allegation to be true. The court declared minor a ward and placed him on probation in his mother's home. On appeal, minor's sole contention is there was insufficient evidence to support the court's true finding that he resisted arrest since the arresting officer was not acting lawfully when he detained him. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

*The Prosecution's Case*

On the evening of January 26, 2013, Officer Nicholas Parcher and his partner were driving in an unmarked police car, patrolling an area where there had been multiple gang shootings, several robberies, and vehicle burglaries. It was dark. Officer Parcher noticed someone dressed in dark clothing, walking near the front of a vacant business in a strip mall shopping center. The person, later identified as minor, stopped close to the window of the vacant business, leaned forward, placed his right hand on the window, and looked through it. Minor then stepped away from the window and looked left to right over both of his shoulders. Minor began walking a little further and then stopped again and looked into the window, the same way he did before. Officer Parcher testified that, based on his training and experience, he had observed minor "casing" the business, which meant that minor was researching the location to see if it was a discrete location, to see what was inside for him to take, to see if there were video cameras, and to evaluate the risk of him

2

being seen or getting caught. Officer Parcher believed minor was casing the business because it was past business hours, all of the businesses in the complex were closed, there were no cars in the parking lot, the lighting was very low, minor was wearing dark clothes, he looked into the window two times, and he looked around him. Officer Parcher testified that copper thefts were prevalent in the city at that time, and that vacant businesses had lighting and electrical cords that could be stolen.

Officer Parcher's partner was driving, and he drove closer to minor so Officer Parcher could make contact. Officer Parcher and his partner were in full uniform. From the passenger seat, Officer Parcher identified himself as a police officer and asked minor to "have a seat." Minor looked toward him and started walking a little more briskly. At that point, Officer Parcher's partner stopped the car, and Officer Parcher got out. As the officer exited the car, minor looked back toward him. Officer Parcher identified himself again and asked minor to have a seat. Minor then started running along the sidewalk, through the shopping center. Officer Parcher ran after him and observed minor reach into his pockets to pull something out. Two dark objects fell from his pocket to the ground. Officer Parcher could not tell what they were, but he was concerned that one of them could be a weapon. As he was chasing minor, Officer Parcher identified himself about four more times and told minor to stop running. Minor looked back in Parcher's direction at least once and still continued to run. Officer Parcher caught up to minor and grabbed him by the shoulder. Minor pulled his shoulder away from him and lost his

balance. Because Officer Parcher was holding on to minor's jacket, they both fell to the ground. Once on the ground, minor did not fight, and he was handcuffed.

During the jurisdiction hearing, Officer Parcher testified that there had been approximately 10 burglaries, four or five shootings, and two robberies in that same shopping center within the preceding six months. On cross-examination, Officer Parcher testified that at the time of the incident, minor was not carrying a backpack, and he did not have a flashlight or any tools on him.

At the close of the People's case, minor requested a judgment of dismissal. He argued that there was no reasonable suspicion for the police to detain him. Based on the totality of the circumstances, the court concluded that the officer was justified in detaining minor, and it denied the motion. The court subsequently found true the allegation that minor resisted a peace officer.

## ANALYSIS

### There Was Sufficient Evidence to Support the Court's True Finding

Minor contends there was insufficient evidence to support the juvenile court's true finding that he resisted a peace officer in the discharge of his duties. Specifically, minor claims there was insufficient evidence that Officer Parcher was engaged in the lawful performance of his duties since he did not have a reasonable suspicion that minor was involved in criminal activity. We disagree.

4

A. *Standard of Review*

"[I]n considering a claim of insufficiency of the evidence, appellant has a heavy burden in demonstrating that the evidence does not support the juvenile court findings. [Citation.]  An appellate court must review the whole record in the light most favorable to the judgment in order to determine whether it discloses substantial evidence that a reasonable trier of fact could find the essential elements of the crime beyond a reasonable doubt." (*In re Ricky T.* (2001) 87 Cal.App.4th 1132, 1136.)  "We must presume in support of the judgment the existence of every fact the trier of fact could reasonably deduce from the evidence." (*In re Jose R*. (1982) 137 Cal.App.3d 269, 275.)  In addition, "we must make all reasonable inferences that support the finding of the juvenile court." (*Ibid*.)  "If the circumstances reasonably justify the verdict, we will not reverse simply because the evidence might reasonably support a contrary finding.  This standard applies to cases based on circumstantial evidence.  [Citation]  The testimony of just one witness is enough to sustain a conviction, so long as that testimony is not inherently incredible. [Citation.]  The trier of fact determines the credibility of witnesses, weighs the evidence, and resolves factual conflicts. . . .  On appeal, we must accept that part of the testimony which supports the judgment." (*In re Daniel G.* (2004) 120 Cal.App.4th 824, 830.)

B. *The Evidence Was Sufficient*

Penal Code section 148, subdivision (a)(1), provides that "[e]very person who willfully resists, delays, or obstructs any public officer, peace officer, or an emergency

medical technician . . . in the discharge or attempt to discharge any duty of his or her office or employment, when no other punishment is prescribed, shall be punished . . . ."

Minor essentially contends that Officer Parcher was not lawfully discharging his duties since he was not justified in detaining minor. We disagree. "A detention is reasonable under the Fourth Amendment when the detaining officer can point to specific articulable facts that, considered in light of the totality of the circumstances, provide some objective manifestation that the person detained may be involved in criminal activity." (*People v. Souza* (1994) 9 Cal.4th 224, 231 (*Souza*).)

Here, Officer Parcher testified that, based on his training and experience, he believed minor was casing the business. Officer Parcher asserted that "all the indicators were there." He and his partner spotted minor in a shopping area where there had recently been burglaries, robberies, and multiple gang shootings. It was dark, it was past business hours, and there were no cars in the parking lot. He observed minor walking along the storefronts, dressed in dark clothing. Minor stopped, put his hand up to the window of a vacant business, and looked inside. He stepped away from the window and then looked around him from left and right, over both shoulders. Officer Parcher testified that it appeared that minor was looking to see if anyone was watching. Officer Parcher saw minor start walking and then stop again, look into the same window, and repeat the same actions. Considering all the circumstances, it was reasonable for Officer Parcher to suspect that minor may be involved in criminal activity. (*Souza*, *supra*, 9 Cal.4th at p. 231.) Furthermore, Officer Parcher's reasonable suspicion only increased when minor

6

walked more briskly and then started running when Parcher identified himself as a police officer and told minor to have a seat. (See *Souza*, *supra*, 9 Cal.4th at p. 242.)

Rather than viewing the totality of the circumstances as stated *ante*, minor isolates each individual circumstance in order to argue that there was no reasonable suspicion that he was engaged in criminal activity. For example, he cites to *People v. Bower* (1979) 24 Cal.3d 638 (*Bower*), superseded by statute on other grounds, as stated in *People v. Lloyd* (1992) 4 Cal.App.4th 724, 733, in support of his assertion that the fact that he was present in an area where crime had previously occurred was of little significance. *Bower* states that "[m]any citizens of this state are forced to live in areas that have 'high crime' rates or they come to these areas to shop, work, play, transact business, or visit relatives or friends." (*Id.* at p. 645.) However, the Supreme Court in *Bower* also stated that it "has been reluctant to conclude that a location's crime rate transforms otherwise *innocent-appearing* circumstances into circumstances justifying the seizure of an individual." (*Ibid.*, italics added.) Accordingly, the Court held that "[t]he presence of a white man at night in a predominantly black residential area having an assertedly 'high' crime rate [was] an inadequate basis on which to seize him under the Fourth Amendment." (*Id.* at p. 649.) Unlike *Bower*, the circumstances in the instant case were not merely "innocent-appearing circumstances." (See *ante.*) Furthermore, we note that "[a]n area's reputation for criminal activity is an appropriate consideration in assessing whether an investigative detention is reasonable under the Fourth Amendment. [Citations.]" (*Souza*, *supra*, 9

7

Cal.4th at p. 240.)  The court here properly considered this factor, along with the other factors discussed *ante*, in finding reasonable suspicion.

Minor further contends that the facts that he began walking briskly and then started running when Officer Parcher told him to stop and take a seat, did not justify the detention.  He also claims that his decision to run was in response to the officer's unlawful attempt to detain him and, thus, cannot be considered a factor indicating criminal activity.  Minor cites several cases to "illustrate the principle that a person is entitled to refuse to cooperate with the police . . . without giving law enforcement a reason to detain him."  Again, minor argues this factor in isolation, without regard for the surrounding circumstances.  We agree that "[f]light *alone* does not trigger an investigative detention."  (*People v. Washington* (1987) 192 Cal.App.3d 1120, 1124, italics added.)  Here, there was a sufficient basis to detain minor before he actually ran away from the officer.  Minor was in a high crime area, Officer Parcher saw him stop and look inside the window of a closed business, look side to side, walk further, and then look again into the window.  In other words, there was reasonable suspicion based on other factors.  Minor's flight simply added to the suspicion.  In view of the totality of the circumstances, the officer was justified in detaining minor.

Finally, minor argues that, for all the same reasons there was no reasonable suspicion that he was involved in criminal activity, there was also no probable cause to arrest him.  We first note that "[a] peace officer may, without a warrant, take into temporary custody a minor:  [¶]  (a) Who is under the age of 18 years when such officer

8

has reasonable cause for believing that such minor is a person described in Section . . . 602." (Welf. & Inst. Code, § 625.) Thus, Officer Parcher only needed reasonable cause, not probable cause, to arrest minor. Minor was aware that Officer Parcher wanted to detain him since Parcher identified himself as an officer and told him to have a seat; yet, minor looked at him and ran away. Minor's flight from the officer delayed the officer's performance of his official duty. (See *People v. Allen* (1980) 109 Cal.App.3d 981, 985-986.) Officer Parcher clearly had reasonable cause to believe that minor had willfully resisted him. (Pen. Code, § 148, subd. (a).)

Viewing the whole record in the light most favorable to the judgment, as we must, we conclude that there was sufficient evidence to support the court's true finding that minor resisted an officer in the discharge of his duties.

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

HOLLENHORST
Acting P. J.

We concur:

KING
J.

MILLER
J.

9