Filed 6/24/14  P. v. Bourne CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Butte)

----

|  |  |
|---|---|
| THE PEOPLE, | C072554 |
| Plaintiff and Respondent, | (Super. Ct. No. CM036486) |
| v. | |
| CHANNING SHALAKO BOURNE, | |
| Defendant and Appellant. | |

In May 2009, in Solano County Superior Court, defendant Channing Shalako Bourne pleaded no contest to assault by means of force likely to produce great bodily injury.  (Pen. Code, § 245, former subd. (a)(1), now subd. (a)(4).)[1]  In exchange, two related counts were dismissed with a *Harvey*[2] waiver.  In September 2009, imposition of

---

[1]    Further statutory references are to the Penal Code unless otherwise indicated.

[2]    *People v. Harvey* (1979) 25 Cal.3d 754.

1

sentence was suspended and defendant was placed on probation for five years. In August 2011, after defendant was found to have violated his probation, he was sentenced to prison for three years. Execution of sentence was suspended and defendant was reinstated on probation.

In June 2012, the Butte County Superior Court accepted transfer of the case from Solano County. In July 2012, the trial court imposed various conditions of probation including that defendant enroll in a batterer's treatment program within seven days. He accepted the terms and conditions. Later that month, the court received proof of defendant's enrollment in the batterer's treatment program and defendant stated he had attended one class.

In August 2012, a petition was filed alleging, among other things, that defendant terminated his participation in the batterer's treatment program without the probation department's permission. At an evidentiary hearing in September 2012, the trial court found the allegation true and revoked defendant's probation. At sentencing in November 2012, defendant requested a *Marsden*[3] hearing. Following the request the trial court held a brief discussion, recessed to attend to other matters, and then returned to defendant's matter with trial counsel representing defendant. No *Marsden* hearing was held. The court ordered execution of the prison sentence.

On appeal, defendant contends (1) revocation of his probation was an abuse of discretion because the evidence did not show that he willfully terminated his participation in the batterer's treatment program; (2) because he was unable to attend the batterer's treatment program due to his indigence, the revocation of his probation violated his due process and equal protection rights; (3) the failure to reinstate his probation was an abuse

---

[3] *People v. Marsden* (1970) 2 Cal.3d 118.

of discretion; and (4) the trial court erred by failing to hold a hearing on his *Marsden* motion. We affirm.

## FACTS[4]

Defendant and D.D. became acquainted via the Internet. On July 5, 2008, they went to a bar and had a few drinks. They proceeded to D.D.'s residence but argued along the way. In an effort to persuade defendant to leave, D.D. hid defendant's laptop computer outside the building. Believing she had stolen the computer, defendant strangled D.D., punched her face, grabbed her arm and hair, and forced her into the bathroom, where he struck the back of her head several times. He also threatened to kill her. When police officers arrived they observed D.D.'s bloody face and found that her front teeth had been pushed backwards.

Defendant admitted grabbing D.D. but claimed her facial injuries had been caused accidentally when his forehead struck her mouth.

## DISCUSSION

### I

### *Substantial Evidence of Probation Violation*

Defendant contends the revocation of his probation was an abuse of discretion because the evidence did not show that he willfully terminated his participation in the batterer's treatment program. He argues the termination was not willful, but due to his indigence, in that he could not afford the cost of the weekly classes. We disagree.

A. *Background*

At the hearing on the probation revocation petition, Andrew McIntyre, the executive director of the Family Violence Education Program, testified that defendant enrolled in a 52-week batterer's treatment program and attended two classes in July 2012.

---

[4]     Because the matter was resolved by plea, our statement of facts is taken from the probation officer's report.

3

However, defendant did not attend any of the weekly classes in August 2012. In response to the failures to attend, McIntyre "submitted a termination report from the Batterer's Treatment Program based on excessive unexcused absences."

McIntyre testified that in September 2012, defendant showed up and was turned away from a class. McIntyre did not make clear whether this was because defendant was unable to pay the fee or because he had been terminated from the program.

McIntyre testified a person who is unable to pay the fee may "pursue a request for reduced program fees" by submitting a program fee assessment form and documentation of income. On July 3, 2012, defendant filled out an assessment form as part of the enrollment process. He listed his monthly income but did not provide any documentation. Nor did he request reduced fees or indicate a weekly amount he would be able to pay. Instead, he left that portion of the assessment form blank.

McIntyre testified defendant's file did not contain any indication that he had contacted anyone at the facility regarding inability to pay fees.

Defendant testified at the probation revocation hearing he had no income. He was not receiving disability income or food stamps, and his application for county welfare was pending. He was unemployed, received no money for food, and ate at churches. He lived in Yankee Hill and owned a 1959 pickup truck and a 1978 motorcycle. He obtained gasoline for these vehicles by asking neighbors for money or by selling small property such as tools. He had no bank account. He owned a laptop computer, a digital camera, and a cellular telephone for which he could not afford service.

Defendant testified he enrolled in the family violence education program, attended two classes in July 2012, and then missed classes in August 2012 because he did not have the money for the classes. He had been $14 short for the second class but a classmate offered money to cover the shortage. The teacher made it clear that defendant would not be allowed in class if he did not have money to pay the fee. The classes had made him

4

"feel good," and there had been "no problem" going to them, but he stopped attending due to "the money issue."

Defendant testified that, at his second and last class, he handed someone a "hardship letter" that explained his indigence. He did not recall anyone directing him to complete the fee waiver or reduction portion of his application.

Defendant testified he had been looking for a job, but he could not afford telephone service and would be inaccessible if anyone tried to call him. He had gone to a personnel agency and had filled out three or four job applications in the past month. The two he remembered were at CalJOBS and a solar company.

Defendant acknowledged the trial court previously ordered him to move from Yankee Hill to a homeless shelter in Chico or Oroville to facilitate his job search. Defendant had not complied because of the difficulty moving his "stuff" and he was concerned his dog would not be allowed at the shelter. When the trial court asked him how he managed to feed the dog, defendant said he would sell his tools or someone would give him money.

Defendant testified he had a medical marijuana recommendation, but he neither grew nor paid for marijuana. He denied his marijuana use affected his attendance at the batterer's treatment program.

Defendant testified he last had a job in 2008 when he was a truck driver for a produce and fresh food distributor. He lost the job because he no longer had his Class A driver's license. He lost the license because he did not have, and could not pay for, his "medical thing" for the license. When the trial court asked defendant how many jobs he had applied for in the last four years, he said he "could not tell," because he had "been incarcerated off and on" and had his "unemployment to live on."

Christina Swint, defendant's supervising probation officer, testified that she met with him monthly. Defendant repeatedly had told Swint that he did not believe he should be attending the batterer's treatment program because he was a victim not a perpetrator.

5

Defendant denied having mental health problems and did not believe a referral to behavioral health was necessary.

Following the testimony, the parties submitted the matter without argument and the trial court found defendant violated his probation. The court told defendant, "[Y]ou haven't done anything that the Court has suggested you do to help yourself. I certainly am empathetic and sympathetic that you don't have money, but you really have done next to nothing over the last four years to alleviate that situation." The court noted defendant could recollect only one prospective employer by name. The court reminded him he had complained of lack of money to pay for transportation from Yankee Hill to prospective employers or services; in response, the court had ordered him to move to a shelter in a city where food, services, and prospective employment would be accessible, but defendant did not comply. The court noted the facts of the underlying assault on D.D. were "very, very serious." The court acknowledged defendant was "very attached to" his land but warned if he did not comply with the court's instructions he would be sent to prison.

B. *Standard of Review*

"Section 1203.2, subdivision (a), authorizes a court to revoke probation if the interests of justice so require and the court, in its judgment, has reason to believe that the person has violated any of the conditions of his or her probation. [Citation.] ' "When the evidence shows that a defendant has not complied with the terms of probation, the order of probation may be revoked at any time during the probationary period. [Citations.]" [Citation.]' [Citation.] The standard of proof in a probation revocation proceeding is proof by a preponderance of the evidence. [Citations.] 'Probation revocation proceedings are not a part of a criminal prosecution, and the trial court has broad discretion in determining whether the probationer has violated probation.' [Citation.]" (*People v. Urke* (2011) 197 Cal.App.4th 766, 772; fn. omitted.) "We review a probation revocation decision pursuant to the substantial evidence standard of review [citation], and

6

great deference is accorded the trial court's decision, bearing in mind that '[p]robation is not a matter of right but an act of clemency, the granting and revocation of which are entirely within the sound discretion of the trial court. [Citations.]' [Citation.]" (*Id.* at p. 773.)

C. *Analysis*

Defendant and D.D. arguably had a "dating relationship" within the meaning of Family Code section 6211, subdivision (c). Section 1203.097 thus required the trial court to order successful completion of a batterer's treatment program as a term of probation. (§ 1203.097, subd. (a)(6).) "The court shall order defendant to comply with all probation requirements, including the requirements to attend counseling, keep all program appointments, and pay program fees based upon the ability to pay." (§ 1203.097, subd. (a)(7)(A)(i).)

"A batterer's program shall consist of the following components: [¶] . . . [¶] (P) A sliding fee schedule based on the defendant's ability to pay. The batterer's program shall develop and utilize a sliding fee scale that recognizes both the defendant's ability to pay and the necessity of programs to meet overhead expenses. An indigent defendant may negotiate a deferred payment schedule, but shall pay a nominal fee, if the defendant has the ability to pay the nominal fee. . . ." (§ 1203.097, subd. (c)(1)(P).)

The evidence showed the family violence education program included the required fee reduction component: it would accommodate a participant who was unable to pay the fees. The trial court found that defendant failed to seek a waiver or reduction of fees by following the necessary procedure.

The evidence showed defendant accepted enrollment in the program as a condition of his probation. Although his counsel advised the court his "finances are a problem," he subsequently returned to court, provided proof of his enrollment, and said he had attended his first class. Defendant did not mention that his finances would prevent him from attending future classes.

7

The evidence showed defendant did not complete the portion of the enrollment form that was necessary to request a reduction or waiver of fees. Nor did he provide any documentation of his income. Defendant did not explain why he failed to complete the fee portion of the form, and his successful enrollment in the program suggested he had the ability to complete the fee portion if he believed a fee reduction was necessary.

Defendant claimed that, at the second session, he gave someone a "hardship letter." McIntyre, the program director, found no documentation of the letter in defendant's file. The trial court had no duty to conclude the batterer's treatment program received the letter.

In any event, there was no evidence the letter included the necessary documentation of defendant's income. Defendant did not "recall" anyone responding to his letter by telling him to complete the fee waiver portion of the enrollment form. The evidence did not show the letter had come to the attention of anyone in authority at the program.

Assuming for purposes of argument defendant had no ability to pay for the batterer's treatment program, there was substantial evidence he did not address his inability to pay by securing a waiver or reduction of fees. The trial court could conclude defendant's failure to pursue the fee reduction constituted a willful failure to complete the program.

Defendant notes the probation revocation petition did not allege he violated his probation by failing to seek and maintain employment or vocational training, by failing to maintain a residence approved by the probation department, or by failing to move into a shelter. Rather, the sole alleged violation was his failure to complete the batterer's treatment program.

The trial court's remarks defendant had not taken sufficient steps to find work and improve his living conditions did not suggest the court treated those failures as probation violations. Rather, the remarks explained why defendant's claimed financial hardship

8

had persisted. Defendant's evidently willful failure to address at least some of the foregoing circumstances supported an inference his failure to complete the batterer's treatment program was willful.

The record contains further evidence of willful failure to complete the batterer's treatment program. First, the probation officer testified defendant repeatedly told her he did not believe he should be attending the batterer's treatment program because he was a victim not a perpetrator. Second, defendant testified "there's a technicality of how long I knew the lady for and that if it was even connected to the domestic violence. I only knew her for less than -- what was it, 48 hours." We construe defendant's remarks as raising the issue whether he and D.D. had the requisite "dating relationship" for purposes of Family Code section 6211, subdivision (c).

Defendant's testimony and his statements to the probation officer support inferences the batterer's treatment program was not a priority for him and his failure to complete the program was willful. The trial court's finding of a willful probation violation is supported by substantial evidence. (*People v. Urke, supra,* 197 Cal.App.4th at p. 773.)

II

*Constitutional Claim*

Defendant contends in a separate argument, "*because* [*he*] *did not willfully refuse to attend classes*, but instead was unable to attend because he was indigent," the revocation of probation and ensuing prison commitment violated his due process and equal protection rights. (Italics added.) In response to the People's argument he forfeited the constitutional claim by failing to assert it in the trial court, defendant suggests the claim turns upon the factual issue the parties litigated: whether his failure to complete the batterer's treatment program was willful.

9

In part I, *ante,* we rejected the premise of defendant's constitutional claim when we concluded the trial court's finding of willful failure is supported by substantial evidence. We thus conclude the constitutional claim has no merit.

III

*Failure to Reinstate Probation*

Defendant contends the trial court abused its discretion when it failed to reinstate him on probation. We disagree.

A. *Background*

The trial court noted it had read the original probation report from Solano County and a supplemental report from Butte County. The court mentioned the original report recommended prison based on the severity of D.D.'s injuries but, at the time, it "felt that it was worth a risk to try [defendant] on probation." The court reviewed the facts of the offense and found them to be "very, very serious." The court indicated, since the case was transferred from Solano County five months earlier, it had "been trying to get [defendant] engaged in a program pretty much ever since he got here." The court noted defendant had been living at a piece of property he had inherited but was damaged by a fire. The residence was not suitable because defendant needed a safe living environment where probation could contact him. But he refused to move to a shelter in town because he could not bring his dog. Nor could he afford the gasoline he would need to continue looking for work. He claimed to have searched for work but provided no proof that he had applied for any jobs.

The trial court concluded defendant was "not willing to accept the services that would allow him to comply with probation." It found he had "made little or no effort to cooperate with the Court in finding an appropriate place to live and availing himself of services, both mental health services as well as social services in obtaining food, clothing, and shelter that would enable him to look for a job or to apply for other kinds of services. The Court cannot help someone [who] is not willing to help [himself]." Finding no

10

reason defendant would "do anything different than [what] he has [done] in the past," the trial court declined to reinstate probation.

B. *Analysis*

Upon finding a probation violation, a court has three options: reinstate probation on the same terms, reinstate it on modified terms, or terminate it and order a commitment to prison. (§ 1203.2, subd. (b); *People v. Medina* (2001) 89 Cal.App.4th 318, 321; *People v. Harris* (1990) 226 Cal.App.3d 141, 147.) When considering probation revocation, the court considers whether the probationer has shown that he can conform his conduct to the parameters of the law. (*People v. Beaudrie* (1983) 147 Cal.App.3d 686, 691.) A grant or denial of probation is within the trial court's broad discretion and will not be disturbed except on a showing that the court exercised its discretion in an arbitrary or capricious manner. A court abuses its discretion when it exceeds the bounds of reason, all of the circumstances being considered. (*People v. Downey* (2000) 82 Cal.App.4th 899, 909-910.)

Defendant argues the trial court should have reinstated him on probation because he had shown up for his probation appointments, had made his court appearances, had not committed any new offenses, and had some mental health problems. In his view, the trial court's decision to deny him further probation and commit him to prison was "an excessive response to what really amounted to [his] failure to properly fill out his paperwork for a waiver or reduction of the fees for the batterers treatment program."

Defendant's failure to obtain a fee waiver typified his unwillingness to help himself to succeed on probation. Defendant claimed inability to find a job, but he refused to relocate to a city where jobs would be more plentiful and accessible without the gasoline he did not have and could not afford. Defendant required mental health and social services, but his refusal to move meant those services, too, would be more difficult to access. That is so even though defendant ultimately succeeded in applying for welfare and food stamps. Defendant had to stay in contact with the probation department, but his

11

refusal to relocate meant probation, too, would be kept at a distance until the next prescheduled appointment. Defendant claimed his dog could not come to the shelter, but he did not claim to have sought -- and failed -- to find a temporary alternative living arrangement for the dog. The court justifiably found "no reason to indicate that [defendant is] going to do anything different than [what] he has [done] in the past."

Defendant claims the trial court's finding "falls outside the bounds of reason" because he testified at the evidentiary hearing that he enjoyed the camaraderie of the batterer's treatment program and his only reason for not attending was his inability to pay. (*People v. Downey, supra,* 82 Cal.App.4th at pp. 909-910.) The court was entitled to weigh defendant's expression of willingness to participate in the batterer's treatment program against the abundant evidence of his unwillingness to comply with orders designed to facilitate his success on probation. No abuse of discretion is shown.

IV

Marsden *Issue*

Defendant contends the trial court erred by failing to hold a hearing on his *Marsden* motion. We disagree.

A. *Procedural Background*

At the outset of the sentencing hearing, defendant stated that he "did not willfully violate" his probation and personally objected to "[p]retty much the whole" probation report. The court invited defendant to identify the errors in the report. When the court asked whether defendant had written down his concerns regarding the report, defendant responded that his concerns were "outlined." Then defendant raised "another matter," which involved his trial counsel. He explained that counsel had "showed up two days ago" and had "a perfunctory attitude towards representing [him]." He continued, "So in other words I'm asking for a *Marsden* motion."

The trial court responded: "All right. And I'm just concerned that I don't have time to do all of this today. I can certainly conduct a *Marsden* hearing. But even if I

12

resolve that, we still are going to have to set this for a hearing at some point to find out what it is you're objecting to that's in the Probation Report so I can determine whether we need to order a new Probation Report or whether this one is adequate."

In response to the trial court's questioning, defendant indicated that his complaints concerned the supplemental probation report. The court recessed the proceeding and handled several other matters. Following the recess, the court heard from defendant at length about his specific complaints and made corrections to the supplemental report. At the end of the discussion of the report, defendant stated he wanted to pursue a "writ of relief," "mandamus and prohibition Penal Code 7.28 [*sic*]." The court replied any such pleading must be in writing and defendant's attorney could determine whether there were grounds for relief. Defendant said he would like help from counsel.

After the trial court stated its indicated sentence, defendant's trial counsel argued on his behalf for reinstatement of probation. The hearing proceeded to its conclusion without further mention of a *Marsden* motion.

*B. Analysis*

*Marsden* provides that when an accused seeks to discharge his appointed counsel and substitute another attorney on the ground of inadequate representation, the court must permit the accused to explain the basis of his contention and to relate specific instances of the attorney's inadequate performance. (*Marsden, supra,* 2 Cal.3d at p. 123; *People v. Lloyd* (1992) 4 Cal.App.4th 724, 731.)

In this case, the record discloses that the trial court did not deprive defendant of a *Marsden* hearing; it simply questioned whether it had time to conduct the hearing that day and suggested a future hearing would be necessary in order to address defendant's complaints about the probation report.[5] At the "future hearing" that day, following the

---

[5]    Defendant's reliance on *People v. Reed* (2010) 183 Cal.App.4th 1137 is misplaced. In that case, the trial court affirmatively told the defendant that, because it

13

recess, defendant did not raise the *Marsden* issue again; did not state he still wanted to discharge counsel; and did not seek to explain any reasons for discharging counsel. (See *People v. Vera* (2004) 122 Cal.App.4th 970, 982 ["defendant abandoned his unstated complaints about counsel by not accepting the court's invitation to present them at a later hearing"]; see also *People v. Harrison* (2001) 92 Cal.App.4th 780, 790; *People v. Lloyd, supra*, 4 Cal.App.4th at pp. 731-732.)

In any event, the failure to permit an accused to state the reasons for his request for substitute counsel is not reversible error per se, but is subject to a harmless error analysis. (*People v. Chavez* (1980) 26 Cal.3d 334, 348-349; *Marsden, supra*, 2 Cal.3d at p. 126; *People v. Washington* (1994) 27 Cal.App.4th 940, 944.) As we will explain, even if the trial court erred in deferring the *Marsden* issue until a future hearing and in failing thereafter to raise the issue and to ask defendant his reasons for seeking the removal of counsel, it was harmless beyond a reasonable doubt. (*Chapman v. California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 710-711].)

A *Marsden* motion is prospective in nature; it raises the issue of "whether the continued representation by an appointed counsel would substantially impair or deny the right to effective counsel." (*People v. Dennis* (1986) 177 Cal.App.3d 863, 870; see also *People v. Smith* (1993) 6 Cal.4th 684, 696.) When a *Marsden* motion is made posttrial, the defendant bears the burden of establishing "that counsel can no longer provide effective representation, either for the purpose of sentencing or of making a motion for new trial based on incompetency of counsel." (*People v. Dennis, supra*, 177 Cal.App.3d at p. 871; *People v. Washington, supra*, 27 Cal.App.4th at p. 944.)

---

was not privy to the dialogue and preparation he may have had with his trial counsel, the court was not in the position to evaluate whether or not counsel had been effective. (*Id.* at p. 1148.) Here, the trial court made no claim that it was not in position to hear defendant's *Marsden* motion. The court said only that it was unsure it could hear the motion that day.

By the time defendant requested a *Marsden* hearing, there was little left for his counsel to do. Defendant had been sentenced to prison with execution of sentence suspended, the allegation of probation violation had been found true, and the only remaining issue was whether to reinstate probation or order execution of the prison sentence.

Moreover, the fact a *Marsden* hearing was not held does not preclude an accused from attacking his trial counsel's competency on appeal. (*People v. Washington, supra,* 27 Cal.App.4th at p. 944.) Yet, defendant has made no claim that his counsel was in any way inadequate in her representation. He does not contend that his counsel did not properly represent him during the sentencing hearing, which was the only proceeding remaining at the time defendant made his *Marsden* request. In fact, during the final hearing in this matter, he said he would like help from counsel.

Accordingly, the alleged *Marsden* error is not a basis upon which to reverse the trial court's judgment. (*People v. Washington, supra,* 27 Cal.App.4th at p. 944.)

DISPOSITION

The judgment is affirmed.


                                              NICHOLSON     , Acting P. J.


We concur:


      DUARTE        , J.


      HOCH          , J.